479 S.E.2d 47

**Michael Anthony ELLIS, Deceased, by Deborah Scott ELLIS, Personal Representative of the Estate of Michael Anthony Ellis, Respondent,**

v.

**Judith Ann NILES, as Personal Representative of the Estate of Jack Niles, Jr., M.D., Petitioner.**

**Michael Anthony ELLIS, Deceased, by Deborah Scott ELLIS, Personal Representative of the Estate of Michael Anthony Ellis, Respondent,**

v.

**Raymond P. BYNOE, M.D., Petitioner.**

No. 24525.

Supreme Court of South Carolina.

Heard March 7, 1996.

Decided Nov. 12, 1996.

---

William L. Pope and Roy F. Laney, Columbia, for petitioner Judith Ann Niles.

Ernest J. Nauful, Jr. and Andrew F. Lindemann, Columbia, for petitioner Raymond P. Bynoe, M.D.

Kimberly A. Raber, Columbia; Michael J. Miller and Deborah A. Vitale, Alexandria, Virginia, for respondent.

FINNEY, Chief Justice:

We granted certiorari to review the Court of Appeals' opinion in this medical malpractice case. *Ellis v. Niles*, 316 S.C. 516, 450 S.E.2d 631 (Ct.App.1994). We vacate that opinion, and decide the pure question of law presented by this appeal: Whether the trial court erred in directing verdicts for the doctors because they owed no duty to the patient, respondent's deceased? We affirm.

The Court of Appeals held the trial judge committed reversible error when he *sua sponte* directed verdicts for the doctors before respondent had presented her last witness. Despite the lack of any objection at trial and respondent's failure to designate these acts as issues on appeal, the Court of Appeals concluded these actions of the trial judge deprived respondent of a fair opportunity to develop an evidentiary record and to raise all pertinent issues. Consequently, the Court of Appeals declined to address the merits of the appeal, and instead reversed and remanded for a new trial. *Ellis v. Niles, supra.*

■ On certiorari, the doctors argue the Court of Appeals erred in reversing and remanding on grounds not properly before it, and respondent contends that the record contains sufficient evidence to allow this Court to consider the merits of the trial court's ruling. We agree with both contentions, vacate the Court of Appeals' opinion, and decide the appeal.

The facts must be viewed in the light most favorable to the respondent since the trial judge directed verdicts against her. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84 (1995). Respondent's decedent (patient) was seriously injured in an automobile accident. The paramedics at the scene notified Richland Memorial Hospital that they were transporting this patient, whom they rated as requiring trauma care.

The hospital issued a trauma alert, and certain designated personnel were waiting in the trauma center when the ambulance arrived. Respondent Bynoe, a general surgeon/traumatologist, was the designated leader of the trauma team then on duty, and respondent Niles, the senior emergency room physician on duty, was designated the second in command of the team. In the trauma room itself, the patient's care was directed by Dr. William Moore, a fifth year resident who, as the chief surgical resident, was third in seniority on the trauma team. Dr. Niles stopped by periodically while the patient was being treated in the trauma room, but never undertook to personally treat the patient or to supervise his care. Dr. Bynoe never came to the trauma room during the patient's treatment, although at one point he spoke with Dr. Moore on the telephone.

X-rays taken at the hospital revealed the patient had suffered a cervical injury. Dr. Moore called Dr. Bynoe, told him of the patient's condition, and told Dr. Bynoe that he had called for an anesthesiologist to establish a non-surgical airway. While the anesthesiologist was not a member of the trauma team, the team routinely called in other medical specialists as needed.[1] Dr. Bynoe told Dr. Moore "to proceed." The anesthesiologist, assisted by Dr. Moore, made several unsuccessful attempts at nasotracheal[2] and orotracheal[3] intubation. Dr. Moore then performed a cricothyroidotomy.[4] It was stipulated that respondent's expert would have testified that it was a breach of the standard of care to repeatedly attempt orotracheal intubation on a person with the patient's type of cervical injury.[5]

---

1. For example, Dr. Moore also called in a neurosurgeon to treat the patient.

2. An airway established through the patient's nasal passage into his trachea.

3. An airway established through the patient's mouth.

4. An emergency surgical procedure which establishes an airway by way of an incision through the patient's neck into the trachea. A tube is then inserted through the opening.

5. A separate suit was brought against the anesthesiologist. *Ellis v. Oliver*, 323 S.C. 121, 473 S.E.2d 793 (1996).

When he first reached the trauma center, the patient had some voluntary movement of three of his extremities and a degree of rectal tone, both indications that he had not been totally paralyzed. By the next morning, however, he was totally paralyzed except for his left arm. Respondent's theory is that the orotracheal intubation attempts caused the patient to suffer a greater degree of paralysis than he otherwise would have. Respondent alleges Dr. Bynoe and Dr. Niles had a legal duty as leaders of the trauma team to personally respond to the trauma alert, and to personally oversee the patient's treatment, and that their breach of this duty renders them liable for any negligence inflicted upon the patient by someone beneath them in the trauma team's chain of command. Respondent rests her claim on the "captain of the ship" doctrine.

Whether the law recognizes a particular duty is an issue of law to be determined by the court. *See e.g., Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173 (1969). If there is no duty, then the defendant in a negligence action is entitled to a directed verdict. *Rogers v. South Carolina Department of Parole and Community Corrections*, 320 S.C. 253, 464 S.E.2d 330 (1995); *cf., Roberts v. Hunter*, 310 S.C. 364, 426 S.E.2d 797 (1993) (doctor entitled to directed verdict in a medical malpractice action where no doctor-patient relationship exists).

Respondent cites no authority for her proposition that all members of a trauma team are required to respond to every trauma alert and to undertake the care of every designated trauma patient, and we decline to impose such a legal duty upon the individual members of the team. For example, such a ruling would impose an impossible duty on the team members in cases of mass disaster when the number of trauma patients exceeded the number of trauma team members. We are not prepared to extend duty to this extreme.

In any case, respondent's reliance on the now largely discredited "captain of the ship" doctrine is misplaced. In its purest form, this doctrine imposed vicarious liability on the operating surgeon for the negligence of any person assisting in the operation. *See* Price, *The Sinking of the "Captain of the Ship"*, 10 J. Legal Med. 323 (1989). Even if we were to recognize this theory, it would not afford respondent any

relief. Since the petitioner doctors never undertook the actual care of the patient, they never undertook to act as the "captains of the ship."

Respondent has not convinced us of the necessary legal predicate for the imposition of liability, that is, the existence of a duty owed by petitioners to the patient. The trial judge properly directed a verdict for the petitioners. Accordingly, we vacate the Court of Appeals' opinion, and affirm the circuit court's judgment.

**VACATED IN PART AND AFFIRMED IN PART.**

MOORE, WALLER and BURNETT, JJ., and DENNIS R. MARKLEY, Jr., Acting Associate Justice, concur.