486 S.E.2d 3

**Wilford CARSON, as Personal Representative of the Estate of Kevin Patrick Carson, deceased, Appellant,**

v.

**Sylvester ADGAR, Respondent.**

No. 24620.

Supreme Court of South Carolina.

Heard April 1, 1997
Decided May 27, 1997.

---

J. Edward Bell, III, of Bell & Moore, Sumter, for appellant.

David C. Holler of Lee, Wilson & Erter, Sumter, for respondent.

BURNETT, Justice:

This is a wrongful death action. Appellant's decedent (Kevin) was killed when he walked across Highway 301 and was struck by a truck. Appellant alleged respondent was legally responsible for Kevin's death because he had "taken charge of" Kevin. who was intoxicated, yet left him on the shoulder of the highway. The trial judge granted respondent's motion for a directed verdict. We affirm.

## FACTS

Respondent testified Kevin worked in his landscaping business for approximately one year prior to the accident. Respondent knew Kevin, who was thirty-three years old, lived

with his parents and did not have a driver's license.[1] Respondent denied knowing Kevin was slow or retarded and testified he did not remember Kevin's father requesting he not let Kevin drink. Respondent testified he and Kevin were good friends and often socialized together.

On the day of the accident, respondent explained Kevin arrived at work between 7:00 and 8:00 a.m. The men finished work early, around 12:30 to 1:30 p.m. Respondent asked Kevin if he would like to go fishing. Respondent drove. The two men bought beer and fished for two to three hours.

Later, Kevin and respondent picked up a friend, Willie Brock. The three men went to a marina, watched the boats, played pool, and drank beer. Afterwards, Brock and respondent purchased liquor and Kevin purchased more beer.

The three men drove to a pool hall in Manning. Brock and respondent went inside; Kevin remained in the car drinking beer. After a while, Kevin blew the car horn and said he wanted more beer. Respondent bought Kevin two beers from the club even though he realized Kevin was "drinking pretty good." Respondent and Brock continued to shoot pool.

Respondent testified the three men left the pool hall, proceeded to Brock's house, and Kevin stated he wanted more beer; Kevin became angry when respondent told Kevin he should not have any more beer. At Brock's house, Brock and respondent tried to get Kevin to move into the front seat of the car, but he refused because he was angry about not having any more beer. Brock remained at home.

When respondent drove onto Highway 301, Kevin decided he wanted to sit in the front seat; respondent told him to wait. Kevin was cursing and tried to climb into the front seat of respondent's GrandAm automobile, knocking the gear-shift into neutral. Kevin stated he wanted a beer and wanted to get out of the car. Respondent testified he could not control Kevin, and pulled over onto the shoulder of the road; Kevin moved the front seat forward, exited the car, and lit a cigarette. Respondent stated he thought Kevin would get in the front seat, but Kevin refused to get back into the car. Re-

---

1. Respondent was approximately thirty-five years old at the time of the accident.

spondent decided to briefly drive away to allow Kevin to "cool off."

Respondent drove 1 to 1½ miles away and then returned. In the meantime, Kevin attempted to cross the highway and was struck by a truck.

Respondent testified he did not know Kevin had too much to drink, but acknowledged he knew Kevin had "over his limit." He stated he made most of the decisions about where he and Kevin would go and when it was time to go home on the day of the accident. Respondent denied forcing Kevin out of the car, but admitted he told the police he had "discharged" or "put Kevin out" of his vehicle.

It is undisputed the accident occurred shortly before midnight; it was dark, misting rain and there were no lights on the highway; Kevin was wearing dark clothing. The investigating police officer testified the shoulder of the highway was "extremely wide" and agreed there was ample room for a pedestrian to walk on the shoulder or the highway.

Appellant argues the trial judge erred by directing a verdict for respondent on the issue of duty. Appellant contends he presented evidence respondent had "taken charge of" Kevin and, thereby, had assumed a duty to leave Kevin in no worse a position than when he took charge of him. Appellant argues respondent "took charge of" Kevin when the two men left work to go fishing. More particularly, he claims respondent "took charge of" Kevin when he did not leave Kevin at Brock's home.

## ISSUE

Did the trial judge err by finding respondent owed no duty of care to Kevin because he did not "take charge of" him?

## DISCUSSION

On review of a ruling granting a directed verdict, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party against whom the verdict was directed. *Botchie v. O'Dowd,* 318 S.C. 130, 456 S.E.2d 403 (1995), *cert. denied* —— U.S. ——, 116 S.Ct. 178, 133 L.Ed.2d 117,. In a negligence action, if there is no

duty, then the defendant is entitled to a directed verdict. *Ellis by Ellis v. Niles,* 324 S.C. 223, 479 S.E.2d 47 (1996); *Rogers v. South Carolina Department of Parole and Community Corrections,* 320 S.C. 253, 464 S.E.2d 330 (1995).

■ Whether the law recognizes a particular duty is an issue of law to be decided by the court. *Ellis by Ellis v. Niles, supra.* In some circumstances, however, the question of whether a duty arises depends on the existence of particular facts. Where the existence or non-existence of a duty depends on facts, it is the duty of the court to instruct the jury as to the defendant's duty, or absence of duty, if either conclusion as to the facts is reached. The Restatement 2d of Torts § 328B comment e (1965).

■ An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Rayfield v. South Carolina Dept. of Corrections,* 297 S.C. 95, 374 S.E.2d 910 (Ct.App. 1988). The common law ordinarily imposes no duty on a person to act; however, where an act is voluntarily undertaken, the actor assumes the duty to use due care. *Russell v. City of Columbia,* 305 S.C. 86, 406 S.E.2d 338 (1991); *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986).

*The Restatement of Torts 2d,* Section 324 (1965) provides: One who, being under no duty to do so, *takes charge of* another who I helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

(Emphasis added).

Under *The Restatement,* an intoxicated person is considered helpless. *Id.* Comment b.

■ Our Court has not previously defined what action is necessary in order to find one has "taken charge of" a helpless

person and, thereby assumed a legal duty of care.[2] We conclude, in order to establish the defendant has "taken charge of" one who helpless, the plaintiff must show "the defendant did more than act, but through affirmative action assumed an obligation or intended to render services for the benefit of another." *McGee By & Through McGee v. Chalfant,* 248 Kan. 434, 806 P.2d 980, 983 (1991); *see also Ocotillo West Joint Venture v. Superior Court,* 173 Ariz. 486, 844 P.2d 653 (App. 1992) (golfer assumed duty by telling golf course employees who had taken drunk golfer's car keys he would drive drunk golfer home.)

■ Viewing the evidence in the light most favorable to appellant the facts do not indicate respondent, through affirmative action, assumed an obligation or intended to render services for Kevin's benefit. We disagree with appellant's claim that respondent "took charge of" Kevin when the two men left work to socialize on the day of the accident. At that time, Kevin was not intoxicated and not helpless. Accordingly, respondent could not have assumed an obligation to render services for Kevin's benefit because of his intoxication.[3]

We further disagree that respondent "took charge of" Kevin because he did not leave Kevin at Brock's home. There is no indication Kevin desired to remain at Brock's and respondent insisted Kevin accompany him. The only testimony of what transpired at Brock's home is that Kevin was angry and refused to move to the front seat of the car.

Instead, the record indicates Kevin and respondent, albeit employer and employee, were good friends and contemporaries. On occasion, the two adults would socialize by drinking and taking fishing trips. On the day of the accident, respondent drove. Respondent's driving, however, is not evidence of the assumption of an affirmative obligation by respondent to

---

**2.** In *Russell v. City of Columbia, supra,* the Court determined a complaint which alleged police officers who preempted individuals from continuing to assist an injured and intoxicated individual was sufficient for purposes of overcoming judgment on the pleadings.

**3.** Although there is some suggestion Kevin was mentally retarded, it is clear he was not so mentally deficient as to be rendered helpless. Moreover, appellant has asserted Kevin was helpless because he was intoxicated.

take care of Kevin. Instead, respondent drove, as presumably on all other occasions when Kevin and respondent socialized, because Kevin did not have a driver's license. Moreover, respondent's decisions about when and where he and Kevin would go suggest only that he directed the social occasion, not that he intended to "take charge of" Kevin.

Furthermore, assuming at some point on the day of the accident Kevin became so intoxicated as to be rendered helpless, there is no evidence respondent caused the intoxication. The record indicates Kevin purchased most of his own beer. There is no suggestion respondent encouraged Kevin to drink. *Cf. Ballou v. Sigma Nu General Fraternity*, 291 S.C. 140, 352 S.E.2d 488 (Ct.App.1986) (fraternity hazing which pressured pledges to consume excessive amount of alcohol presented question of negligence).[4]

Finally, assuming respondent ordered Kevin out of his car, we do not conclude this conduct is evidence respondent assumed to render services for Kevin's benefit. To the contrary, ordering Kevin out of the car is evidence respondent did not intend to render services for Kevin's benefit.

Because appellant presented no evidence from which a jury could find respondent "took charge of" Kevin, the trial judge correctly concluded respondent had no duty to Kevin and properly directed the verdict for respondent. *Ellis by Ellis v. Niles, supra.*

The remaining issues are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Appellant's Issue II: *Rogers v. South Carolina Department of Parole & Community Corrections, supra* (without a duty there can be no actionable negligence). Respondent's Issue: *Cisson v. McWhorter*, 255 S.C. 174, 177 S.E.2d 603 (1970) (it is the Court's duty to reject an appeal prosecuted by a party who has not been aggrieved in the legal sense by the judgment of the trial court); Rule 201(b), SCACR (only a party who is aggrieved by a judgment may appeal).

**AFFIRMED.**

---

4. In any event, a social host incurs no common law liability to a third party when he serves alcohol to his adult guests. *Garren v. Cummings & McCrady, Inc.*, 289 S.C. 348, 345 S.E.2d 508 (Ct.App.1986).

220

TOAL, Acting C.J., MOORE and WALLER, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.