494 S.E.2d 813

Ethel MILLER, Respondent,

v.

CITY OF CAMDEN and The Kendall Company, Defendants,

Of whom The Kendall Company is Petitioner.

Henry MILLER, Respondent,

v.

CITY OF CAMDEN and The Kendall Company, Defendants,

Of whom The Kendall Company is Petitioner.

Henry MILLER, as Personal Representative of the Estate of Fletcher Levar Miller, Respondent,

v.

CITY OF CAMDEN and The Kendall Company, Defendants,

Of whom The Kendall Company is Petitioner.

Henry MILLER, as Personal Representative of the Estate of Felicia Tyrette Miller, Respondent,

v.

CITY OF CAMDEN and The Kendall Company, Defendants,

Of whom The Kendall Company is Petitioner.

Jerry HENRY, individually and as Personal Representative of the Estate of Jason Lamont Henry, Respondent,

v.

CITY OF CAMDEN and The Kendall Company, Defendants,

Of whom The Kendall Company is Petitioner.

Mattie Ellerby JACKSON, as Personal Representative of the Estate of John Ellerby, Respondent,

v.

CITY OF CAMDEN and The Kendall Company, Defendants,

Of whom The Kendall Company is Petitioner.

No. 24732.

Supreme Court of South Carolina.

Heard Dec. 7, 1995.

Decided Dec. 23, 1997.

Toal, J., concurred in part and dissented in part and filed opinion.

Burnett, J., dissented and filed opinion.

312

Robert J. Sheheen, of Savage, Royall & Sheheen, Camden, for petitioner.

Desa A. Ballard and Allard A. Allston, III, both of Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston and Barnwell; and Thomas D. Broadwater, Columbia, for respondents.

MOORE, Justice:

Respondents commenced these wrongful death and personal injury actions against petitioner Kendall Company (Kendall) and City of Camden (City) to recover for damages allegedly sustained when the Kendall Lake dam broke. The trial judge granted Kendall summary judgment on the ground Kendall owed respondents no duty of care. The Court of Appeals reversed, finding Kendall owed a duty of care as a matter of law by virtue of its control of the dam and its voluntary

undertaking to monitor the lake for the safety of others. *Miller v. City of Camden*, 317 S.C. 28, 451 S.E.2d 401 (1994). We conclude it is for the jury to determine if Kendall owed respondents a duty of care as a volunteer and, accordingly, affirm as modified.

## FACTS

Kendall Lake is a forty-one acre reservoir built by Kendall to aid production at its adjacent textile plant. In 1961, Kendall conveyed the lake, the dam, and the adjoining woods to City.[1] City uses water from the lake to supplement its water supply. By agreement, Kendall retained the right to draw water from the lake for production purposes, providing it does not lower the surface level of the lake more than one foot below spillway level. In return, City agreed to maintain the level of the lake at approximate spillway level, absent some repair or weather emergency.

Kendall judges water level to be too high for production if the plant boiler room begins to flood. Water level is controlled by two sluice gates which are kept locked. Kendall has had no keys to the sluice gates since at least 1984. When the boiler room floods, Kendall contacts City to open the sluice gates on the dam to lower the level of the lake.

In 1979, the Army Corps of Engineers inspected the dam and found it unsafe. Kendall received a copy of the report requiring that certain repairs be made. Kendall contacted the South Carolina Land Resources Commission (Land Resources) to advise that it was not the owner of the dam. Both Kendall and City employees subsequently attended a meeting requested by Land Resources to discuss the inspection report. At this meeting, an emergency plan was formulated for notification of the appropriate officials in the event of an imminent dam failure. Along with City employees, Kendall employees were listed on Land Resource's emergency notification forms as personnel assigned to monitor the dam.

---

1. Kendall inadvertently retained several feet of property upon which a portion of the foot of the dam rests. The Court of Appeals found no duty arose from this incidental ownership and that ruling is not before us on appeal.

314

On October 10, 1990, heavy rainfall caused the lake to overtop the dam causing its breach. Respondents subsequently commenced these actions for injuries sustained in the flood.

## DISCUSSION

The Court of Appeals held Kendall owed respondents a duty of care because Kendall controlled the dam by virtue of its contract with City. Kendall asserts this was error. We agree.

One who controls the use of property has a duty of care not to harm others by its use. *Dunbar v. Charleston & W.C. Ry. Co.*, 211 S.C. 209, 44 S.E.2d 314 (1947); *Peden v. Furman University*, 155 S.C. 1, 151 S.E. 907 (1930). Conversely, one who has no control owes no duty. *Clark v. Greenville County*, 313 S.C. 205, 437 S.E.2d 117 (1993). Here, Kendall's contractual right of control was limited to maintaining a certain normal water level for production purposes. The contract between Kendall and City specifically reserved to City complete control of the dam and water level in the event of a weather emergency. Kendall had no physical control of the sluice gates and no contractual right to control them in this situation. Accordingly, we conclude Kendall owed no duty of care to respondents based on its contractual right of control.

The Court of Appeals also found Kendall owed respondents a duty as a matter of law because it voluntarily undertook to monitor the lake for the benefit of others.

The common law ordinarily imposes no duty on a person to act. If an act is voluntarily undertaken, however, the actor assumes the duty to use due care. *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991). While the law imposes this duty on a volunteer, the question whether such a duty arises in a given case may depend on the existence of particular facts. *Carson v. Adgar*, 326 S.C. 212, 486 S.E.2d 3 (1997). Where there are factual issues regarding whether the defendant was in fact a volunteer, the existence of a duty becomes a mixed question of law and fact to be resolved by the fact-finder. *Id.; accord Jefferson County School Dist. v.*

*Justus,* 725 P.2d 767 (Colo.1986); *Culver–Union Township Ambulance Service v. Steindler,* 611 N.E.2d 698 (Ind.App. 1993) (*expressly adopted and incorporated by reference* 629 N.E.2d 1231 (Ind.Sup.Ct.1994)); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank,* 108 N.M. 84, 766 P.2d 928 (Ct.App.1988); *Chiplock v. Niagara Mohawk Power Corp.,* 134 A.D.2d 96, 523 N.Y.S.2d 232 (1988); *Mozingo v. Pitt County Mem. Hosp.,* 101 N.C.App. 578, 400 S.E.2d 747 (1991) *aff'd on other grounds* 331 N.C. 182, 415 S.E.2d 341 (1992).

 In this case, there is a factual issue regarding Kendall's status as a volunteer. The facts indicate a Kendall employee was listed on the Land Resources emergency notification form and Kendall had an employee present at the meeting during which an emergency plan was formulated. Summary judgment should be denied if more than one inference can be drawn from the evidence. *Koester v. Carolina Rental Center, Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994). We find more than one inference can be drawn from this evidence. Whether these facts establish that Kendall volunteered to monitor the lake level for the benefit of *third parties* [2] or was simply facilitating its own arrangement with City is an issue that should be resolved by the jury. *See S.C. Ins. Co. v. James C. Greene & Co.,* 290 S.C. 171, 348 S.E.2d 617 (Ct.App. 1986) (a cause of action for negligence requires a duty owed by the defendant *to the plaintiff*).

Accordingly, we reverse the award of summary judgment and remand for the case to be submitted to the jury for it to determine whether Kendall volunteered to monitor the lake level for the benefit of third parties. The decision of the Court of Appeals is

AFFIRMED AS MODIFIED.

FINNEY, C.J., and WALLER, J., concur.

TOAL, J., dissenting and concurring in separate opinion.

BURNETT, J., dissenting in separate opinion.

---

2. We decline to adopt the expanded liability of Restatement 2d of Torts § 324A (1965). *This section imposes a duty on "one who undertakes ... to render services to another which he should recognize as necessary for the protection of a third person" and requires no actual volunteer relationship between the defendant and the third party.*

TOAL, Justice:

In this case, we have wide divergence of opinions from the trial court, the Court of Appeals and this court on the issue of whether and under what circumstances the law imposes liability on a volunteer toward a third party. The Court of Appeals, relying on Restatement (Second) of Torts § 324A, held that a duty is imposed on anyone (volunteer or not) who undertakes to render services for the protection of others to avoid risk of harm of any third persons. The majority rejects the expanded liability of the Restatement, but holds that a volunteer can be liable to third parties and that here there is a jury question as to whether Kendall volunteered to monitor for the benefit of third parties. Thus, the majority affirms, with modification, the Court of Appeals' reversal of the trial court's grant of summary judgment for Kendall.

My brother in dissent would hold as a matter of law that Kendall is a volunteer and thus liable. I would hold as a matter of law that Kendall was not a volunteer and thus not liable at all. I agree with the majority that one who volunteers to assume responsibility for the protection of third parties may be liable to third parties for negligent conduct in the performance of the volunteer services. Where I depart from the majority is in its holding that there is a jury question as to Kendall's volunteer status. I wholeheartedly concur with the majority's rejection of Restatement (Second) of Torts § 324A, which expands liability to third parties for one who undertakes to render a service. I respectfully dissent from the portion of the majority opinion that concludes there was evidence that Kendall volunteered to assume responsibility for monitoring threats to the Kendall Lake Dam. With the greatest respect for my brothers in the majority, I believe the trial court's grant of summary judgment to Kendall should be affirmed. I would reverse the Court of Appeals.

The majority opinion contains an excellent outline of the facts and legal claims presented. It quite appropriately concludes that Kendall has absolutely no liability for injury and death claims arising out of the ownership, maintenance and operation of Kendall Lake and Dam. The City is the owner and operator of this property. Kendall has not even had a key to this property since the early 1980's. Kendall's liability is

solely premised upon its perceived "Good Samaritan" or "volunteer" status.

The land and dam at issue here are owned and controlled by the City of Camden. Kendall conveyed this property to Camden in 1961. This property is subject to regulation by the U.S. Army Corps of Engineers pursuant to federal legislation and regulations known as the National Dam Safety Program. The property is also subject to regulation by the South Carolina Department of Land Resources pursuant to the S.C. Dams and Reservoirs Safety Act.

The specific facts upon which the majority concludes that there is a jury issue as to whether or not Kendall is a volunteer are the following. In June of 1979, the Army Corps of Engineers issued an inspection report which criticized the safety of the dam at Kendall Lake. In August of 1979, State Land Resources Director of Dam Safety sent a letter to Camden and Kendall Mills suggesting a meeting at his office to discuss the inspection report on the Kendall Lake Dam. On September 6, 1979, a meeting was held with Land Resources officials attended by City of Camden and Kendall representatives. The only evidence relied on by the majority to find this "volunteer" status is the attendance by a Kendall employee at this meeting in which an emergency notification plan was formulated, as well as the placement of that representative's name on an "Emergency Alert Notification" form used by the South Carolina Department of Land Resources. Far from showing Kendall volunteered to monitor Kendall Lake Dam or the water level at Kendall Lake, the emergency notification forms merely constituted a recognition that Kendall was usually the first party to experience flooding from high water levels in the lake. City's public works director clearly stated that his own department and City's police department were responsible for monitoring the lake and the dam.

Kendall attended the 1979 meeting at the written request of State Land Resources. The emergency notification forms on which Kendall employees are listed are required by the Dams and Reservoirs Safety Act, S.C.Code Ann. §§ 49–11–110 to – 260 (Supp.1995). The Dams and Reservoirs Safety Act does not create a private cause of action in third parties. It simply

eludes my understanding how Kendall's agreeing to place the name of one of its employees on a form developed by a governmental agency and required by the Act gives rise to a duty to members of the general public.

We live in an age in which governmental regulation increasingly intrudes into almost every aspect of business and private life. Much of this regulation is the necessary price we pay for order and safety in our society. Nevertheless, the Orwellian "Big Brother is watching you"[1] power of late 20th century bureaucrats makes any meeting between the regulator and the regulated inherently coercive. It simply does not square with common sense experience to characterize a business response to a governmental inquiry as voluntary.

This was not a situation where a business unilaterally decided to render assistance to someone in distress. Instead, the Director of the Dams and Reservoirs Safety Program within the South Carolina Land Resources Conservation Commission requested that the plant engineer of Kendall Mills meet with him to prepare an "Emergency Alert Notification" form. It is dubious that any company in a similar position would resist compliance. Under the rule established in this case, civil liability as a volunteer could attach when a company does nothing more than comply with a governmental request for information. I would reverse the Court of Appeals and reinstate the summary judgment granted defendant Kendall by the trial court.

Accordingly, I concur in part and dissent in part.

BURNETT, Justice:

I agree with the majority's conclusion Kendall owed no duty of care to respondents based on its contract with the City. However, I conclude, by virtue of its status as a volunteer, Kendall owed a duty of care to respondents as a matter of law. Accordingly, I dissent.

## FACTS

In 1979, the United States Army Corps of Engineers inspected the Kendall Lake Dam, found it to be unsafe, and

---

1. George Orwell [Eric Blair], *1984* (1948).

issued a written report placing the dam in the "high" hazard classification because of "the potential for property damage and/or loss of life in the event of dam failure." The report noted there was no warning system in place in the event of flooding and recommended implementation of a warning system. The report was mailed to Kendall's engineer and the City.

Consequently, staff members from the South Carolina Land Resources Conservation Commission met with City officials and Kendall managers to discuss the problem. The Army Corps of Engineers' report and a safety program were discussed. At the meeting, Kendall management participated in the formulation of an emergency plan for notification of the appropriate officials in the event of an imminent threat to the dam. An "Emergency Alert Notification" form was prepared, naming Kendall Plant Manager Michael Scronce and Foreman G.H. McCaa as personnel assigned to monitor the dam. Subsequent Emergency Alert Notification forms also listed Kendall employees. In August 1990, two months prior to the accident, a notification form was prepared listing R.M. Kushman, Kendall's Plant Engineer, as primary "Personnel Assigned to Monitor" the dam, and Foreman G.H. McCaa as alternate.

## DISCUSSION

The common law ordinarily imposes no duty on a person to act; however, where an act is voluntarily undertaken, the actor assumes the duty to use due care. *Carson v. Adgar*, 326 S.C. 212, 486 S.E.2d 3 (1997); *Roundtree Villas Ass'n, Inc. v. 4701 Kings Corp.*, 282 S.C. 415, 321 S.E.2d 46 (1984); *Crowley v. Spivey*, 285 S.C. 397, 329 S.E.2d 774 (Ct.App.1985). The Restatement of Torts (Second) § 324A (1965) provides as follows:

**Liability to Third Person for Negligent Performance of Undertaking**

*One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm*

resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(Emphasis added).

The determination of the existence of a duty is solely the responsibility of the court. *Ellis by Ellis v. Niles*, 324 S.C. 223, 479 S.E.2d 47 (1996) (court held supervising members of trauma team who did not undertake to care for patient had no legal duty to patient). "Whether the law recognizes a particular duty is an issue of law to be decided by the court." *Carson v. Adgar*, 326 S.C. at 217, 486 S.E.2d at 5; *see also Evans v. Rite Aid Corp.*, 317 S.C. 154, 452 S.E.2d 9 (Ct.App.1994), *aff'd as modified*, 324 S.C. 269, 478 S.E.2d 846 (1996); Restatement 2d of Torts § 328B comment e (1965) ("it is the ... function of the court to determine whether, upon facts in evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act or to refrain from acting for the protection of the plaintiff. This decision is always for the court") (emphasis added).

The majority declines to adopt § 324A and, instead, suggests, in order for respondents to prevail, Kendall must have contemplated that monitoring the lake level was for respondents' benefit. Although this Court has not affirmatively adopted § 324A, it has on occasion considered the section. For instance, in *Salvo v. Hewitt, Coleman & Associates, Inc.*, 274 S.C. 34, 260 S.E.2d 708 (1979), the Court found the plaintiff's evidence did not support a negligence action under § 324A. The Court did not, however, indicate any disapproval of the principles set forth in § 324A.

The facts and circumstances regarding Kendall's status as a volunteer are not in dispute. Knowing the dam was classified as a "high" hazard dam because of "the potential for property damage and/or loss of life in the event of dam failure," Kendall participated in the creation of an emergency notification plan. As part of the plan, an "Emergency Alert Notification" form

was prepared. Specific Kendall personnel were assigned to monitor the dam. More recent notification forms named other Kendall personnel as primary and alternate "Personnel Assigned to Monitor" the dam. Only one conclusion can be drawn from these facts: Kendall understood breach of the dam could result in serious damage to life and property and it volunteered to monitor the dam and to notify appropriate officials in the event of an imminent threat. Kendall's undertaking was clearly for its own benefit and for the benefit of others. As such, Kendall owed a duty to use reasonable care in monitoring the dam and in notifying appropriate officials of any danger. *Compare Carson v. Adgar, supra* (where facts and circumstances indicated only that defendant did not take charge of intoxicated plaintiff, trial judge properly concluded defendant did not assume any duty to plaintiff).

The Court of Appeals properly found Kendall owed a duty to respondents to use reasonable care in the operation of the lake and dam as a matter of law. *Ellis by Ellis v. Niles, supra* (whether the law recognizes a particular duty is an issue of law to be decided by the court). I would reverse the award of summary judgment and remand the case to be submitted to the jury to determine whether Kendall breached its duty of due care and, if so, whether there were any resulting damages.