529 S.E.2d 549

**Norma J. HUBBARD, as Personal Representative of the Estate of Marjorie Hammond Hubbard, Deceased, Appellant,**

v.

**Leonard TAYLOR, Respondent.**

No. 3133.

Court of Appeals of South Carolina.

Heard Feb. 9, 2000.

Decided March 20, 2000.

Rehearing Denied May 27, 2000.

Scott Elliott, of Elliott & Elliott; and Howard Hammer, of Hammer, Hammer, Carrigg & Potterfield, both of Columbia, for Appellant.

Robert J. Thomas, of Rogers, Townsend & Thomas, of Columbia, for Respondent.

MOREHEAD, Acting Judge:

Norma J. Hubbard (the daughter) brought this negligence action against Leonard Taylor, the owner and director of Greenbrier Retirement Village, for the injuries and resulting death of her mother, Marjorie Hammond Hubbard (the mother), a resident of Greenbrier. Taylor moved for summary judgment based on the daughter's execution of a Covenant Not to Sue which settled all claims against Taylor and Greenbrier except for any claim against Taylor, individually, to the extent he was not acting on behalf of Greenbrier. The trial court granted Taylor's motion for summary judgment, finding Taylor had no duty to the mother separate and apart from his duty as operator of Greenbrier and that, even if there were a duty, Taylor's alleged negligence was not the proximate cause of the mother's injuries. The daughter appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Taylor owned and operated the Greenbrier Retirement Village located in Winnsboro, South Carolina. In 1991, the daughter applied for admission of her mother to Greenbrier. The mother was then 76 and had experienced periods of confusion and had wandered from her home on several occasions. She suffered from hardening of the arteries, which affected her mental condition. Her short-term memory was very poor, and she seemed to regress to past incidents. Taylor visited with the mother to determine her needs and accepted her as a resident of Greenbrier.

On January 8, 1992, Taylor's automobile was in the parking lot at Greenbrier. The vehicle was unlocked, and an unsealed

container of antifreeze was in the floorboard of the back seat. A couple days before, Taylor had used the container of antifreeze to refill the radiator. Taylor usually left his car unlocked, and he did so on this occasion. The car had been used at Greenbrier since 1988 to transport residents at the facility.

When Ada Willingham, a Greenbrier employee, arrived for work on January 8, 1992, she heard a car horn blowing and went to investigate. She found the mother and another resident, Aileen Waddell, sitting in Taylor's car in the parking lot. Waddell was in the driver's seat and the mother was in the back. When asked what they were doing, the mother stated they were going for a ride, and Waddell said next time they would get a car that cranks. The mother picked up the container of antifreeze from the floor, held it in her arms, and called it her "doll baby." Willingham told them to go back inside, and both ladies returned to Greenbrier without assistance.

Later that evening, Rhonda Jennings, a supervisor at Greenbrier, noticed that both the mother and Waddell began experiencing stomach pains and falling down. Jennings had the mother transported to the emergency room after she began throwing up brown material. Waddell was taken to the hospital the following morning. Both the mother and Waddell subsequently died of antifreeze poisoning.

On April 7, 1994, the daughter settled her claims with Taylor and Greenbrier for the death of the mother for $750,-000. Of the settlement amount, $7,500 was allocated to the action for conscious pain and suffering and $742,500 for wrongful death. In exchange, the daughter executed a "Covenant Not to Sue," which expressly provided the daughter was releasing

> Greenbrier Retirement Center, Greenbrier Retirement Village, Inc., Continental Insurance Company, *their agents, servants, employers, employees, affiliates, subsidiaries, parent companies, officers, directors, shareholders,* personal representatives, heirs, successors, and assigns and all others who could be held responsible for the actions of these persons, firms, corporations and companies [hereinafter referred to collectively as "Covenantees"], to refrain and desist from instituting or asserting against Covenantees any

claim, demand, action or suit of whatsoever kind or nature, either directly or indirectly, for injuries or damage to person or property resulting from, or arising out of, the injury to or death of Marjorie H. Hubbard. [Emphasis added.]

The covenant operated as a general release subject to one exception. The covenant expressly reserved the right for the daughter to sue any other persons against whom there may be a claim for damages,

including, but not limited to, Leonard Taylor, individually, *to the extent that Leonard Taylor was not acting on behalf of any of the Covenantees,* provided that among the foregoing rights, the undersigned [the daughter] hereby expressly and specifically reserves the right to sue Leonard Taylor individually on account of his negligence and/or recklessness in connection with his *ownership, maintenance and use of an automobile.* [Emphasis added.]

The daughter filed this complaint dated December 2, 1994, asserting damages for Taylor's alleged "negligence, carelessness, recklessness, and wantonness ... in the ownership, operation, maintenance and use" of his automobile. Specifically, the daughter asserted Taylor was negligent in parking his car on the premises of Greenbrier with a container of antifreeze inside, without locking the vehicle, "when he knew or should have known that accessibility of entry into said automobile with an unsealed container of antifreeze would be dangerous to residents of the facility, including [the mother], who would be likely to enter said automobile ."

Taylor moved for summary judgment. The trial court granted summary judgment to Taylor, finding Taylor owed no duty to the mother exclusive of any duties related to his status as an agent, servant, employee, officer, or director of Greenbrier. The trial court further found that, even if Taylor had a duty to lock his car so as to make the antifreeze inaccessible to the mother, the breach of that duty was not the proximate cause of the harm to the mother.

## ISSUE

Did the trial court err in granting summary judgment to Taylor on the daughter's claim of negligence in the operation, maintenance, and use of an automobile?

## STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine issue as to a material fact is involved and further inquiry into the facts is not desirable to clarify the application of the law. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997); *Hamiter v. Retirement Div. of the South Carolina Budget & Control Bd.*, 326 S.C. 93, 484 S.E.2d 586 (1997).

## LAW

■ The elements for a cause of action for the tort of negligence are: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, and (3) damages proximately resulting from the breach of duty. *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998); *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 468 S.E.2d 292 (1996).

■ A legal duty of care owed by the defendant to the plaintiff must exist to maintain an action for negligence. *Bishop*, 331 S.C. at 86, 502 S.E.2d at 81. Duty is generally defined as "the obligation to conform to a particular standard of conduct toward another." *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 483, 238 S.E.2d 167, 168 (1977).

■ "The common law ordinarily imposes no duty on a person to act. If an act is voluntarily undertaken, however, the actor assumes the duty to use due care." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997). The Restatement (Second) of Torts § 314 (1965) also embodies this principle and provides that, as a general rule, an individual is under no duty to provide aid or protection to another even if the individual realizes or should realize that action on his part is necessary to protect the other party. *Cf. Rogers v. South Carolina Dep't of Parole & Community Corrections*, 320 S.C. 253, 255, 464 S.E.2d 330, 332 (1995) ("Generally, one has no duty to control the dangerous conduct of another or to warn a

potential victim of such conduct.") However, an affirmative legal duty to act may be created by statute, contract, relationship, status, property interest, or some other special circumstance. *Carson v. Adgar*, 326 S.C. 212, 486 S.E.2d 3 (1997); *Wyatt v. Fowler*, 326 S.C. 97, 484 S.E.2d 590 (1997).

Negligence is not actionable unless it is the proximate cause of the plaintiff's injury. *Hanselmann v. McCardle*, 275 S.C. 46, 267 S.E.2d 531 (1980). Proximate cause requires proof of (1) causation in fact and (2) legal cause. *Rush v. Blanchard*, 310 S.C. 375, 426 S.E.2d 802 (1993); *Oliver v. South Carolina Dep't of Highways & Pub. Transp.*, 309 S.C. 313, 422 S.E.2d 128 (1992).

"Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence." *Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990).

Legal cause is proved by establishing foreseeability, i.e., that the injury occurred as a natural and probable consequence of the defendant's negligence. *Id.* at 72, 393 S.E.2d at 916. *See also Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671 (1978); *Stone v. Bethea*, 251 S.C. 157, 161 S.E.2d 171 (1968). Although foreseeability of some injury from an act or omission is a prerequisite to the plaintiff establishing proximate cause, it is not necessary for the defendant to have contemplated the particular event which occurred. *Greenville Mem'l Auditorium v. Martin*, 301 S.C. 242, 391 S.E.2d 546 (1990). Rather, it is sufficient if the defendant should have foreseen that his negligence would probably cause injury to someone. *Id.*

## ANALYSIS

The daughter argues the trial court erred in finding that Taylor did not owe the mother an individual duty to lock his car or otherwise secure the antifreeze so as to prevent the mother from obtaining the antifreeze from his parked vehicle. The daughter also argues the trial court erred in finding that, even if there were a duty, a breach of that duty was not the proximate cause of the harm to the mother. We disagree.

The Covenant Not to Sue limited the daughter's right to maintain an action against Taylor for his individual negligence to the extent he was not acting on behalf of Greenbrier and only for "his negligence and/or recklessness in connection with his ownership, maintenance and use of an automobile." Thus, Taylor's duties in this case were no greater than those of any ordinary automobile owner or operator.

The daughter relies on *Everett v. White*, 245 S.C. 331, 140 S.E.2d 582 (1965), to support her proposition that Taylor owed her mother an independent duty to lock his car or otherwise secure the antifreeze. *Everett* involved a landowner who, in the course of constructing a house, left an excavated hole filled with mud and debris open on his property over a considerable period of time. The plaintiff, a five year old boy, fell into the hole while playing on the property and suffered serious injuries. The plaintiff filed suit against the landowner, alleging the landowner was negligent in leaving a dangerous condition exposed in a place where children were accustomed to playing without taking precautions to safeguard against injury to the children. The supreme court held that the complaint in *Everett* stated a sufficient cause of action for actionable negligence. *Id.* at 338, 140 S.E.2d at 586.

The daughter maintains the antifreeze was a dangerous item which Taylor "left exposed under circumstances where those mentally incapable of appreciating the danger" were likely to come into contact with it. Specifically, the daughter asserts Taylor knew the antifreeze was a toxic substance. She says Taylor knew from past experience that toxic substances were dangerous and could cause injury if mishandled. She asserts Taylor knew her mother often became confused and wandered aimlessly. She states Taylor knew her mother needed to be watched regularly because of her tendency to wander. She asserts she informed Taylor her mother was unable to care for herself properly and was a danger to herself. The daughter further contends Taylor was not acting on behalf of Greenbrier when he serviced his car and left the antifreeze in his unlocked car in the Greenbrier parking lot. Therefore, the daughter argues, Taylor had a duty, exclusive of his duty as operator of Greenbrier, to lock his automobile or otherwise secure the antifreeze after servicing his car to prevent injury to the mother, her companion, or someone similarly situated.

Even assuming the daughter is correct in her statement of the facts and circumstances in this case, her reliance on *Everett* is misplaced. *Everett* specifically addresses a child's grounds for recovery in a negligence action which parallels the attractive nuisance doctrine. *See Everett,* 245 S.C. at 335–38, 140 S.E.2d at 584–86. Therefore, *Everett* is not applicable in this case.

We conclude the trial court did not err in granting summary judgment in favor of Taylor. Although the daughter contends that Taylor should have been aware of her mother's tendency to wander and her failing mental faculties and that he should have acted to protect her, the daughter executed a covenant for $750,000 releasing Taylor from any liability in that regard. We find that, in his status as an ordinary automobile owner, Taylor had no duty to the mother under the circumstances present here.

■ Moreover, we agree with the trial court that, even if there were a duty, the daughter failed to establish proximate causation because the mother's actions were not reasonably foreseeable. The fact that the mother may wander does not mean she would necessarily drink a substance not meant for human consumption. Thus, even if the daughter can prove everything in her complaint, foreseeability is not present. *See Horne v. Beason,* 285 S.C. 518, 331 S.E.2d 342 (1985) (holding where evidence of foreseeability is lacking, the issue is no longer one for the jury).

In *Horne,* the plaintiff argued that the defendants, including employees of the jail and highway patrol, should have anticipated that Horne would harm himself while incarcerated after an arrest. The court held the jailers were not expected to be fortunetellers or to foresee that Horne would use the cloth belt of his bathrobe to hang himself in prison. The court stated:

[D]amages for an injury resulting from a negligent act of the defendant may be recovered if a reasonably prudent and careful person should have anticipated, under the same or similar circumstances, that injury to the plaintiff or to those in a like situation would probably result. The most common test of negligence, therefore, is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming within the range of such acts.

\*   \*   \*

... The existence of actionable negligence *depends, not upon what actually happened, but upon what reasonably might have been expected at the time, and not by a judgment from actual consequences* which were not then to be apprehended by a prudent and competent man.

*Id.* at 521, 331 S.E.2d at 344 (citation omitted) (emphasis added). *Cf. Scott v. Greenville Pharmacy, Inc.,* 212 S.C. 485, 48 S.E.2d 324 (1948) (holding pharmacist's unlawful sale of barbiturates to customer resulting in addiction was not the proximate cause of customer's subsequent self-imposed harm); *Crolley v. Hutchins,* 300 S.C. 355, 387 S.E.2d 716 (Ct.App. 1989) (finding there was no foreseeability and no proximate causation as a matter of law where the defendant sold alcohol to the already-intoxicated plaintiff, who later attempted suicide while in jail following his arrest; the court stated the attempted suicide was an act which the defendant could not have reasonably foreseen and anticipated when he last served the plaintiff).

In this case, the mother's act of ingesting the antifreeze was too remote to be attributable to any act or omission by Taylor independent from his duty as the operator of Greenbrier.

For the foregoing reasons, the trial court's order granting summary judgment in favor of Taylor is

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.