199 N.J. Super. 571 (1984)
489 A.2d 1272
THOMAS ROZYCKI, JR., AN INFANT, BY HIS GUARDIAN AD LITEM, THOMAS ROZYCKI, SR., MICHAEL ROZYCKI, AN INFANT, BY HIS GUARDIAN AD LITEM, THOMAS ROZYCKI, SR., THOMAS ROZYCKI, SR., INDIVIDUALLY, PATRICIA ROZYCKI, INDIVIDUALLY, CHAD MIEDEN, AN INFANT, BY HIS GUARDIAN AD LITEM, DOUGLAS MIEDEN, MARTIN MIEDEN, AN INFANT, BY HIS GUARDIAN AD LITEM, DOUGLAS MIEDEN, DOUGLAS MIEDEN, INDIVIDUALLY, DARLENE MIEDEN, INDIVIDUALLY, ROBERT FARIELLO, AN INFANT, BY HIS GUARDIAN AD LITEM, RALPH FARIELLO, RALPH FARIELLO, INDIVIDUALLY, AND PHYLLIS FARIELLO, INDIVIDUALLY, PLAINTIFFS,
v.
ARTHUR H. PELEY AND CATHERINE C. PELEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided September 21, 1984.
*572 Francis X. Hermes for plaintiffs (Thiele & Hermes, attorneys; Richard Niemiec on the brief).
James McLaughlin and Daniel E. Chase for defendants (McLaughlin & Cooper, attorneys; Daniel E. Chase on the brief).
MEREDITH, J.S.C.
The issue presented in this case is whether the duty to warn, first addressed in our courts in McIntosh v. Milano, 168 N.J. Super. 466, 495 (Law Div. 1979), should be imposed on a wife who has knowledge of her husband's probable dangerousness.
Plaintiffs in this action are a group of infant boys who were victims of the sexual and physical assault of defendant, Arthur H. Peley. This action was instituted by their parents as guardians ad litem. The complaint alleges that the infant plaintiffs suffered physical and psychological injury as a direct result of defendant's assaults.
The complaint also names Catherine C. Peley, wife of Arthur Peley. The plaintiffs allege that Catherine Peley knew of her husband's pedophilia and thus had a duty to warn plaintiffs of the possible danger to them. The case is now before this court on a motion for summary judgment by Catherine Peley.

*573 I.

THE FACTUAL BACKGROUND.
In 1977 defendant, Arthur Peley, was arrested on a charge of debasing the morals of a minor. Peley applied to the pretrial intervention program and was accepted. As a condition of this acceptance Peley, accompanied by his wife, underwent psychiatric treatment.
The incidents which form the basis of the present civil action occurred over a period of time from May 17, 1981 through December 21, 1981. A complaint was filed charging Peley with sexual assault in violation of N.J.S.A. 2C:14-2(b).
The police report states that a number of parents living in Peley's neighborhood had called the Hillsborough Township Police to report that Peley had assaulted their children on various occasions. The acts in question occurred at the rear of the Peley home, in the swimming pool. Statements were taken from the juveniles involved, confirming these assaults.
A warrant for arrest was issued on March 19, 1982. On April 19, 1982 an indictment was returned charging Peley with six counts of sexual assault. This was subsequently dismissed and an accusation was filed charging sexual assault in the second degree in violation of N.J.S.A. 2C:14-2(b).
One week after his arrest for these offenses, on March 23, 1982, Peley entered Carrier Clinic where he remained until his discharge on June 30, 1982. The final diagnosis was pedophilia.
Peley pled guilty to one count of sexual assault in the second degree in violation of N.J.S.A. 2C:14-2(b).
On July 30, 1982 Peley was sentenced to the Adult Diagnostic and Treatment Center, Avenel, New Jersey, for a period of five years.
The instant complaint was filed on November 10, 1982. A declaratory judgment action was instituted between Peley's personal attorney and his homeowners insurance carrier to determine if his insurer is required to provide a defense of this *574 action. Trial was held on June 6, 1984 and judgment was entered in favor of the insurer.
Discovery from Peley, who is currently at the Adult Diagnostic Center at Avenel, has been somewhat incomplete. Based partially on the incomplete status of discovery plaintiffs argue that the present motion is premature.
The present motion, however, requires the court to determine whether Catherine Peley owed a duty to plaintiffs. The existence of a duty is a question of law to be determined by the court and may appropriately be resolved on a motion for summary judgment. See McIntosh v. Milano, supra, 168 N.J. Super. at 495. In light of the fact that plaintiffs have had the opportunity to depose Arthur and Catherine Peley, the fact that there is still some discovery to be conducted is not a bar to this court's determination of the duty owed by Catherine Peley.

II.

THE DUTY TO WARN: APPLICABILITY TO A NON-MENTAL HEALTH PROFESSIONAL.
Plaintiffs argue that Catherine Peley owed a duty to warn the infant plaintiffs or their parents of Arthur Peley's pedophilia. Catherine Peley contends that no such duty exists and, even were such a duty to be imposed, she was not given sufficient notice of her husband's condition to give rise to a duty to warn.
Plaintiffs' contention is essentially based on public policy considerations. They argue that there is a broad public interest in preventing sexual assault on small children which requires the imposition of a duty. They analogize the instant case to situations in which parents have been held responsible for the torts of their children, or landowners held liable for the dangerous condition of their property.
In McIntosh v. Milano, the court adopted § 315 of the Restatement, Torts 2d (1965). The court stated:

*575 ... Generally, a person (the first person) does not have the duty to control the conduct of another person (the second person and potential tortfeasor) so as to prevent that person from harming a third person unless a special relationship exists either between the first person and the second person imposing such a duty or between the first person and the third person giving him a right to protection. [168 N.J. Super. at 483]
The law recognizes certain types of special relationships which give rise to a duty of care. These include: the physician-patient relationship, N.J.S.A. 26:4-15; see also Earle v. Kuklo, 26 N.J. Super. 471, 474-475 (App.Div. 1953) (physician has a duty to report manifestations of communicable diseases such as tuberculosis and to warn third persons of possible exposure); the landlord-tenant relationship, Braitman v. Overlook Terrace Corp., 68 N.J. 368, 382 (1975) (landlord owes duty to take reasonable measures to safeguard tenants from foreseeable criminal acts of third persons); common carrier-guest, Skillen v. West Jersey & Seashore R.R. Co., 96 N.J.L. 492, 494 (E. & A. 1921) (carrier owes passenger duty of exercising high degree of care to protect him from injury by other passengers on its cars). Other special relationships which give rise to this type of duty include innkeeper-guest, possessor of land-invitee and school-student. See Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583-588 (1962).
Attorneys, also, have been held to owe a special duty to their clients and to the public at large. For example, an attorney with knowledge of his client's tendency to abuse his children must report that information to the appropriate authorities. N.J.Sup.Ct.Advisory Comm. on Professional Ethics, Op. 280 (1982); see also James E. George, et al., "The Therapist's Duty To Protect Third Parties: A Guide For The Perplexed," 14 Rutgers L.J. 637, 642, n. 43 (1983).
There has been a considerable amount of attention focused lately on the duty owed by mental health professionals and, specifically, whether psychiatrists, psychologists and therapists owe a "duty to warn" intended victims of their patients of the patient's probable dangerousness.
*576 The California courts have recognized the psychiatrist-patient relationship as such a "special relationship" and have required psychiatrists to warn the intended victims of their patients. Tarasoff v. Regents of the University of California, 131 Cal. Rptr. 14, 17 Cal.3d 425, 551 P.2d 334 (1976). Tarasoff was a wrongful death action brought against, among others, psychotherapists employed by the university to recover for the murder of plaintiff's daughter by an out-patient treated at the student health center.
Plaintiff's parents filed suit alleging, inter alia, that the therapist had a duty to warn them of the threat to their daughter which duty had been breached. On this issue the court held:
When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances. [131 Cal. Rptr. at 201, 17 Cal.3d at 431, 551 P.2d at 340]
This issue was addressed in the New Jersey courts in McIntosh v. Milano, supra. Relying on Tarasoff, the court determined that a mental health professional may have a duty to warn in certain circumstances. It held:
[A] psychiatrist or therapist may have a duty to take whatever steps are reasonably necessary to protect an intended or potential victim of his patient when he determines, or should determine, in the appropriate factual setting and in accordance with the standards of his profession established at trial, that the patient is or may present a probability of danger to that person. The relationship giving rise to that duty may be found either in that existing between the therapist and the patient, as was alluded to in Tarasoff II, or in the more broadly based obligation a practitioner may have to protect the welfare of the community, which is analogous to the obligation a physician has to warn third persons of infectious or contagious disease. [168 N.J. Super. at 489-490]
The court stated that this obligation being imposed was "similar to that already borne by the medical profession." Ibid.
The duty to warn has, to date, been imposed only on mental health professionals or those in the medical field. The defendants *577 in Tarasoff and McIntosh were a therapist and a psychiatrist respectively. The duty has also been imposed on a Veterans Administration hospital and individual members of the hospital staff when a former patient at the hospital was released, purchased a shotgun and fired it into a crowded nightclub killing plaintiff's decedent and injuring plaintiff. Lipari v. Sears, Roebuck & Co., 497 F. Supp. 185, 194-195 (D.Neb. 1980) (applying Nebraska law).
In Thompson v. County of Alameda, 167 Cal. Rptr. 70, 27 Cal.3d 741, 614 P.2d 728 (1980), Plaintiffs sued the county on the grounds that it negligently or recklessly released from custody a juvenile delinquent known to have dangerous, violent propensities towards young children. Within twenty-four hours of this individual's release, he sexually assaulted and murdered plaintiffs' young son. The court declined to hold that the county owed a duty to warn the police, the parents of neighborhood children or the mother of the juvenile delinquent. The court found that no specific threat to an identifiable victim had been made and thus no duty to warn was imposed.
In dicta, the Thompson court commented that requiring notice to be given to all the parents of neighborhood children "might substantially jeopardize rehabilitative efforts both by stigmatizing released offenders and by inhibiting their release." Id., 167 Cal. Rptr. at 79, 614 P.2d at 737.
No reported decision has been located which imposed a duty to warn on the wife of a potential tortfeasor and/or criminal. The cases that have imposed such a duty to warn or have imposed liability for failure to prevent foreseeable harm to third parties have limited that duty to mental health professionals. See, e.g. Semler v. Psychiatric Institute of Washington, D.C., 538 F.2d 121, 124 (4 Cir.1976), cert. den., 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976) (psychiatrists); Hasenei v. United States, 541 F. Supp. 999 (D.Md. 1982) (psychiatrist); Leedy v. Hartnett, 510 F. Supp. 1125 (M.D.Pa. 1981) (Veterans Administration Hospital and personnel); Williams v. United States, *578 450 F. Supp. 1040, 1045 (D.S.D. 1978) (hospital); Bradley Center v. Wessner, 161 Ga. App. 576, 287 S.E.2d 716, 720 (1982) (psychiatric hospital).
Indeed, the defendant's professional status has repeatedly been a deciding factor. The McIntosh court, for example, relied on the physician's dual obligations to protect his patient and the members of the community at large. The court explicitly stated that the obligation it was imposing was similar to that already borne by the medical profession. It held that the duty to warn is to be determined in accordance with the standards of the defendant's particular profession as established at trial.
In the instant case, Catherine Peley is a lay person and cannot be held to the higher standard of care reserved for professionals. As a lay person she owes no specific duty to the community in general as would a medical doctor. McIntosh, 168 N.J. Super. at 489. Thus, unlike the psychiatrist in McIntosh, imposing such a duty to warn on Mrs. Peley would create wholly new obligations on her and would not be simply adding to the obligations already borne.
It would be unreasonable to expect a lay person to predict another's dangerousness when mental health professionals, experts in the field, are unable to do so with any true specificity. See Monahan, "The Prevention of Violence," Community Mental Health In The Criminal Justice System (Monahan, ed., Pergamon Press, Oxford, England: 1976).
The margin of error would indeed be great.[1] Accordingly, this court holds that McIntosh v. Milano should not be read *579 so broadly as to require imposition of a duty to warn on Catherine Peley.

III.

THE DUTY TO WARN: THE MARITAL RELATIONSHIP.
Catherine Peley is more than a disinterested bystander, however. She is the wife of Arthur Peley. Plaintiffs argue that this is all the more reason why she should be held liable since her constant, close contact with Arthur Peley put her on notice of his dangerousness.
Requiring Catherine Peley to report on her husband's activities in this manner violates the public policy of encouraging and fostering the marital relationship. As the McIntosh court stressed, the public interest involved is one of the key factors in determining whether a duty should be imposed.
There is a strong public interest in protecting the marital relationship. The spouse of an accused in a criminal action, for example, shall not testify except in very limited circumstances. Evid.R. 23(2). "No other testimonial privilege sweeps so broadly." Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). The privilege "furthers the important public interest in marital harmony." Ibid.; see also In Re Vitabile, 188 N.J. Super. 61, 66 (App.Div. 1983).
Evid.R. 28 is also designed to foster the marital relationship by protecting confidential communications between spouses. And see also, N.J.S.A. 2A:156A-11 which provides that the State must show "special need" before it can wiretap a telephone at "a place used primarily for habitation by a husband and wife."
Thus, requiring a wife to inform her neighbors of her husband's alleged sexual proclivities, while not violative of the requirements of these evidentiary privileges, would certainly denigrate their underlying policy considerations of promoting and encouraging marriage. A spouse's duties include being *580 loyal to their husband or wife and giving them the benefit of their companionship and society. See, e.g., Nashman v. Nashman, 33 N.J. Super. 602 (App.Div. 1955); Frank v. Frank, 10 N.J. Super. 73 (App.Div. 1950), mod. 7 N.J. 225 (1950). To require one spouse to inform on the other strikes at the very heart of this obligation of loyalty. Imposing a duty to warn of this nature would require a spouse to tell the world at large that one's husband or wife is, in a sense, "unfit" or dangerous. The spouse is put in the untenable position of either remaining silent out of a sense of loyalty or protection and thereby incurring civil liability, or warning the neighbors (or whatever third party may be involved) and incurring their spouse's anger, disappointment or shame. The public policy of protecting children from sexual assault does not require a spouse to be put in this dilemma.
Thus, this court holds that imposing a duty on one spouse to warn of their mate's probable dangerousness violates the strong public policy of encouraging and fostering the marital relationship.

IV.

CONCLUSION.
In conclusion, this court holds that there was no duty to warn imposed on the defendant, Catherine Peley. As a lay person, and not a medical health professional, and as the wife of the potential tortfeasor, Mrs. Peley owed no duty to these plaintiffs to warn them of her husband's probable dangerousness.
The court recognizes that there is a strong public policy in discovering and apprehending sex offenders, particularly where young children are involved. There is an equally strong public policy, however, favoring marriage and encouraging the marital relationship. Further, the court is unwilling to impose the duty of predicting dangerousness, identifying potential victims and warning them on a lay person, especially in view of the fact *581 that mental health professionals have admitted difficulties in doing so. The imposition of such a duty would be unworkable, unfair and, most significantly, unreliable. The limits of liability would be extremely vague and the standard used for determining a breach of the duty complex and unclear. There would be no guarantee that imposition of such a duty would in fact further the public policy of prevention and punishment of sexual offenders, for it is more than likely that spouses would remain silent and suffer the consequences rather than expose their mates' failings.
For all of these reasons, defendant Catherine Peley's motion for summary judgment is granted.
NOTES
[1] This prompts the question of what standard would be applied to determine if the lay person breached the duty to warn. Given that the lay person cannot be held to a professional standard of care, the standard used would have to be whether a reasonable person would have known or should have known that the tortfeasor/criminal was probably dangerous. This test would be virtually unworkable.