525 S.E.2d 909

**John DOE, Individually, and as Guardian ad Litem for his minor children, James Doe and Jason Doe, and on behalf of all others similarly situated, Appellants,**

**v.**

**Merle BATSON, Respondent.**

**No. 3092.**

Court of Appeals of South Carolina.

Heard Oct. 5, 1999.

Decided Dec. 20, 1999.

Rehearing Denied Feb. 26, 2000.

J. David Flowers; and William A. Jordan, both of Greenville, for appellants.

Edward R. Cole, of The Ward Law Firm, of Spartanburg, for respondent.

CURETON, Judge:

John Doe brought this putative class action on behalf of his two minor sons and other unidentified young males who were sexually abused by Donald Chrisler Batson (Donald). In the complaint, Doe asserted a negligence cause of action against Merle Batson (Batson), Donald's mother, alleging Batson had a duty to warn the minor boys or their parents of Donald's

propensity for sexually abusing minors and to warn them of the activities which occurred in her home while Donald lived there. The trial court granted summary judgment in favor of Batson, finding as a matter of law there was no duty to warn in these circumstances. Doe appeals. We reverse and remand.

## FACTS

Donald, Batson's adult son, worked as a youth minister at Brushy Creek Baptist Church. Doe alleges his sons and other minor males were sexually abused by Donald while they were on church premises, at church functions away from the church premises, and at Batson's residence in Easley. It is undisputed the acts of sexual abuse occurred. Donald pled guilty to seventeen felony counts of criminal sexual conduct and was incarcerated when the summary judgment motion was heard. Doe brought separate actions against Donald, Batson, and Brushy Creek Baptist Church.

In Doe's action against Batson, Doe contends Batson allowed Donald to live in her home from 1991 to 1995 and, on numerous occasions, was home when Donald brought young boys into the house and sexually molested them. Doe maintains Batson knew Donald had the young boys in his bedroom in her house. Doe alleges Batson's failure to act in these circumstances and to warn the young boys or their parents of Donald's propensities for sexual abuse was negligent, willful, wanton, and demonstrated a reckless disregard for the rights, safety, and well-being of the children visiting in her home. Doe contends the children who were sexually molested by Donald were harmed as a result of Batson's failure to warn or act in these circumstances.

Batson answered the complaint and moved for dismissal of the action under Rule 12(b)(6), SCRCP for failure to state a cause of action. The trial court denied the motion.

On January 31, 1998, Doe noticed the deposition of Batson in this case. Doe subsequently postponed the deposition, at the request of defense counsel in the other two cases, to consolidate the discovery process.

On or about February 23, 1998, Batson filed a motion for summary judgment with an accompanying affidavit. In the

affidavit, Batson stated Donald was born on August 6, 1964, and "was, therefore, an adult at least 27 years of age at the time these acts allegedly began in 1991." Batson also stated her son resided in her "home from and after November, 1993." Further, Batson maintained she "did not know, nor did she have any reason to believe or know, that any such acts as alleged by [sic] Donald Chrisler Batson were being committed, inclusive of any acts allegedly committed in her home." At the hearing on the summary judgment motion, Batson's attorney argued Batson had no duty or ability to control Donald's actions in her home because he was an adult when the acts were committed.

The trial court granted summary judgment to Batson, holding South Carolina does not recognize a duty to warn in these circumstances. The trial court concluded there was no decision or rule of law in South Carolina "which would create liability on the part of [Batson] for the acts of her adult son."

## LAW/ANALYSIS

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997).

The party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991). Once the moving party meets the initial burden of showing an absence of evidentiary support for the opponent's case, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 789 (1990).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper*, 326 S.C. 318, 487 S.E.2d 187. Moreover, summary judgment should not be granted if there is dispute as to the conclusions to be drawn from the evidentiary facts, even when there is no dispute as to the facts. *Id.*

## I.   *Summary Judgment Prior to Completion of Discovery*

Doe contends the trial court abused its discretion in granting summary judgment because he had noticed Batson's deposition, but was unable to reschedule it before the summary judgment hearing. We agree.

When a plaintiff relies upon the pleadings without filing any counter-affidavits or making some factual showing in opposition to the summary judgment motion, the trial court is required to grant summary judgment, if appropriate, as a matter of law based on the facts presented. *Humana Hospital–Bayside v. Lightle*, 305 S.C. 214, 407 S.E.2d 637 (1991). However,

> [s]ince it is a drastic remedy, summary judgment "should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues." This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery.

*Baughman*, 306 S.C. at 112, 410 S.E.2d at 543 (citations omitted).

On November 24, 1997, Batson filed a motion to dismiss for failure to state a cause of action. This motion was denied. Thereafter, on · January 31, 1998, Doe noticed Batson's deposition in this case for March 11, 1998. Doe postponed the deposition at the request of defense counsel in the two related cases to consolidate the discovery process. Shortly thereafter, on or about February 23, 1998, Batson filed a motion for summary judgment. The hearing on the summary judgment motion was held telephonically on May 7, 1998.

At the hearing, Doe's counsel stated they were in the process of scheduling depositions for Batson and others, but he had not had the opportunity to depose Batson prior to the

hearing. He asked the court to deny summary judgment and allow him to complete the discovery he had already noticed. Although he had not filed opposing affidavits, Doe's counsel requested an opportunity to file affidavits under Rule 56(f), SCRCP.[1] Doe informed the judge that depositions of two of the victims were already scheduled for the following Tuesday.

Additionally, there was confusion over whether the hearing was on the motion to dismiss or the summary judgment motion. Although Doe's attorney concedes he received the summary judgment motion and affidavit, the notice from the court and the motions calendar referenced a hearing on a motion to dismiss rather than one for summary judgment.[2]

We conclude that under the circumstances of this case, Doe was not given a full and fair opportunity to complete discovery. The trial court therefore erred in granting summary judgment. *See Baird v. Charleston County,* 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999) ("summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery"). Furthermore, the trial court abused its discretion in refusing to allow Doe's attorney to file affidavits pursuant to Rule 56(f), especially in light of the confusion surrounding the hearing.

## II. Theory of Liability

### A. Duty to Control Adult Child in Same Residence

In its order granting summary judgment, the circuit court stated Doe could point to no law that would create liability on the part of Batson for the acts of her adult son. The circuit court summarily dismissed this theory, stating, "since [Batson] cannot be liable for the actions of her adult son, it follows . . .

---

1.  Rule 56(f) states, in pertinent part,

    Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

2.  The motion to dismiss was heard on January 29, 1998.

that she cannot be held accountable under the derivative theory that she failed to warn others."[3]

We agree a theory of vicarious liability would not be availing in these circumstances. *See generally Thorne v. Ramirez,* 346 So.2d 121 (Fla.Dist.Ct.App.1977); *M.V.G. v. Lucas,* 590 So.2d 1322 (La.Ct.App.1991) (home childcare provider had no duty to supervise adult non-employee son who sexually abused child); *Alioto v. Marnell,* 402 Mass. 36, 520 N.E.2d 1284 (1988) (parents had no duty to supervise and control nineteen year-old son who consumed alcoholic beverages at parents' home and subsequently injured another in automobile accident); *Maxwell v. Keas,* 433 Pa.Super. 70, 639 A.2d 1215 (1994) (parents had no duty to control adult child who became intoxicated and murdered guest at parents' home). However, the question raised in this appeal concerns the liability of Batson for her own conduct or failure to act, not her son's.

Doe asserted at the summary judgment hearing and in his motion to alter or amend the judgment that he was not seeking recovery under a theory of vicarious liability, that is, Batson is liable for the torts of her adult son regardless of any negligence on her part by virtue of the parent-child relationship. Rather, Doe is proceeding against Batson for her own negligence under the theory of a duty to warn. Doe reiterated his argument in his motion for reconsideration.

> The Plaintiffs are not seeking recovery on any theory of vicarious liability. Rather, the Complaint states a claim based on the Defendant's independent acts of negligence for failing to warn these minor children of a known hazard in her home.... Here, the victims were minor children who deserve the benefit of any doubt when examining the duty of any adult who may be in a position to prevent harm.

---

3. In support of this proposition, the court stated,

   Indeed, § 20-7-340, South Carolina Code of Laws, 1976, limits the liability of a parent of an unmarried minor under the age of 17, who lives with that parent, to the sum of $1,000.00. The specific limitation on parental liability found in this Statute, by implication, leads to the conclusion that the common law rule of nonliability of a parent for the torts of an adult child fully applies in South Carolina.

   Doe argues the circuit court committed prejudicial error in relying on this statute to support its decision because this statute was repealed effective July 1, 1996. Although § 20-7-340 was repealed, we find the circuit court's reliance on this statute did not prejudice Doe.

While this Defendant might not have been able to stop her son from molesting little boys (which is not certain) she certainly could have very easily warned the children, or their parents or called the police.

The duty alleged in this case is not a derivative duty, but an independent action premised on Batson's negligence and has no relation to Donald's liability for his acts. Thus, we must consider whether it is possible for a duty to warn to exist under these circumstances.

### B. Duty to Warn Third Parties (children) of the Dangerous Propensities of an Adult Child Living in Parents' Home

The common law generally imposes no duty on a person to act. *Miller v. City of Camden*, 329 S.C. 310, 494 S.E.2d 813 (1997). Without a duty there can be no actionable negligence. *Rogers v. South Carolina Dep't of Parole & Community Corrections*, 320 S.C. 253, 464 S.E.2d 330 (1995).

Whether the law recognizes a particular duty is an issue of law to be decided by the court. In some circumstances, however, the question of whether a duty arises depends on the existence of particular facts. Where the existence or non-existence of a duty depends on facts, it is the duty of the court to instruct the jury as to the defendant's duty, or absence of duty, if either conclusion as to the facts is reached.

*Carson v. Adgar*, 326 S.C. 212, 217, 486 S.E.2d 3, 5 (1997) (citation omitted). Assuming Batson knew or should have known of the harm being inflicted in her own home, the ultimate question becomes whether a duty to warn will be recognized in this context. Whether there is a duty to warn minor children of potential sexual abuse in order to avoid the potential for child molestation is a novel question in this state.

#### 1. Duty to Warn Arising from Special Relationship or Circumstance

Although one generally has no duty to control the dangerous conduct of another or to warn a potential victim of such conduct, "when a defendant has the ability to monitor, supervise, and control an individual's conduct, a special relationship exists between the defendant and the individual, and

the defendant may have a common law duty to warn potential victims of the individual's dangerous conduct." *Rogers*, 320 S.C. at 255–56, 464 S.E.2d at 332 (citing *Rayfield v. South Carolina Dep't of Corrections*, 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988), *cert. denied*, 298 S.C. 204, 379 S.E.2d 133 (1989); and Restatement (Second) of Torts §§ 315, 319 (1965)). It is not necessary for the injuring party to have made a threat while under the defendant's control or custody. All that is required to impose a duty to warn is that the defendant knew or should have known of a specific threat made to harm a specific person. *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998).

In this case, the specific persons to be harmed were readily identifiable as the minor males brought to Batson's home and taken to her son's room. At each instance, if Batson knew or should have known of their presence and of the threat of harm her son posed to them, but failed to warn them, such may constitute a failure to warn of a specific threat to a specific victim.

"Typically, courts are reluctant to find family members liable for an assailant's actions when the liability is premised on negligence-based actions which charge the family members with such things as failure to warn of the assailant's dangerous propensities...." Kimberly C. Simmons, Annotation, *Liability of Adult Assailant's Family to Third Party for Physical Assault*, 25 A.L.R.5th 1 at 11 (1994). However, case law from other jurisdictions lends credence to Doe's assertion that Batson had a duty to warn in this case. *See, e.g., Hackett v. Schmidt*, 630 So.2d 1324 (La.Ct.App.1993); *Wood v. Astleford*, 412 N.W.2d 753 (Minn.Ct.App.1987); *J.S. v. R.T.H.*, 301 N.J.Super. 150, 693 A.2d 1191 (App.Div.1997) (overruling *Rozycki v. Peley*, 199 N.J.Super. 571, 489 A.2d 1272 (Law Div. 1984)).

### 2. Duty to Warn Based on Premises Liability Theory

Doe also argues a duty to warn of defects in the premises applies, requiring Batson take minimal steps to warn children in her home who lack knowledge of or the ability to discover defects. Although South Carolina has not addressed this issue directly, cases from other jurisdictions indicate a homeowner can be negligent for failing to warn of a known

violent or abusive person on the premises. *See, e.g., Thibeault v. Seifert,* 388 So.2d 224 (Fla.Dist.Ct.App.1980) (Grimes, Acting C.J. dissenting); *Barmore v. Elmore,* 83 Ill.App.3d 1056, 38 Ill.Dec. 751, 403 N.E.2d 1355 (1980); *Youngblood v. Schireman,* 53 Wash.App. 95, 765 P.2d 1312 (1988).[4]

---

**4.** In *Thibeault,* the trial court found the parents were liable for the actions of their adult son who continually harassed their neighbors over a two-year period while being allowed to remain in their home while they were away. The conduct was said to be "over-exuberant at best and simply outrageous at worst, and was particularly abusive toward [the neighbors]." *Id.* at 225. The appellate court reversed in part, finding the parents had no vicarious liability for their son's actions, and the parent-child relationship was insufficient to impose liability. *Id.* The dissent, looking beyond the parent-child relationship and focusing on the duty of the parents as the owners of the premises, found the parents had a duty to take reasonable steps to see that those they permitted to occupy their premises did not harass their neighbors. The dissent noted the trial court, in addition to awarding damages, had granted an injunction against "the Thibeaults, 'their heirs, assigns, guest or invitees,' from trespassing" on the Seiferts property. *Id.* at 226.

In *Youngblood,* a woman who had been beaten by the defendants' adult son in the defendants' home brought suit alleging, among other things, that the defendants had a duty as homeowners to warn of their son's abusive behavior when intoxicated. 765 P.2d at 1315 ("Youngblood does not argue that a 'special relation' [giving rise to a duty to warn] exists here but rather that the [parents] failed in their duty to warn her of their son's abusive behavior when he drank liquor."). The trial court granted summary judgment and the appellate court affirmed. The court's holding was based upon the fact that "[t]he respondents had no reason to know that their son would assault Youngblood in their home to trigger a duty under Restatement § 342 to warn her of a risk of harm." *Id.* at 1316. The case did not foreclose the possibility of a victim recovering against parent/homeowners where the evidence indicates the parents knew or had reason to know of the son's abusive behavior.

In *Barmore,* the plaintiff, who was visiting the defendant's home, was attacked with a knife by the defendant's adult son. The plaintiff sued the defendant, arguing the defendant had a duty to warn of the possibility of the son's attack. The case was brought under a premises liability theory. *Id.* at 1357 (citations omitted) ("since defendants' son was no longer a minor, plaintiff was not proceeding on a theory of parental liability for the torts of a child. Instead, plaintiff's basic contention is that defendants, as landowners, were negligent in failing to protect him from a dangerous condition upon their premises namely their son who had a history of mental illness."). At the close of the plaintiff's case, the trial court directed a verdict in favor of the defendants. On appeal, the court held "the plaintiff is best characterized as a licensee social guest and thus the only duty owed to the plaintiff by

■ In South Carolina, the victim of a sexual abuse on another's premises may bring suit under a premises liability theory. *Cf. Burns v. South Carolina Comm'n for the Blind,* 323 S.C. 77, 448 S.E.2d 589 (Ct.App.1994). In *Burns,* a resident at a rehabilitation center who was sexually assaulted by another resident brought a negligence suit against the Commission. The jury returned a verdict in the victim's favor. On appeal, the Commission argued the trial court erred in refusing to charge the jury on premises liability. This court agreed, stating that the relationship between the Commission and the victim was "analogous to that of a business invitee, [and] imposes liability on the Commission, if at all, similar to that of an owner of a business." 323 S.C. at 80, 448 S.E.2d at 591. This court specifically held, "this is a premises liability case and, therefore, the judge should have charged the jury on premises liability, as limited by the South Carolina Tort Claims Act." *Id.*

■ "A social guest is a licensee." *Neil v. Byrum,* 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986). As relates to a licensee, a landowner has a duty

[t]o use reasonable care to warn him of any *concealed dangerous conditions* or activities which are known to the possessor, or of any changes in the condition of the premises which may be dangerous to him, and which he may reasonably be expected to discover.

*Id.* (quoting *Frankel v. Kurtz,* 239 F.Supp. 713, 717 (W.D.S.C. 1965)) (emphasis in original).

At a minimum, the victims in this case were social guests in Batson's home. Therefore, the law imposes upon Batson a duty to warn of concealed, dangerous conditions on the premises of which she knew or should have known, but which were unknown to the victims in this case.

---

the defendants was to warn him of hidden dangers unknown to the plaintiff of which the defendants had knowledge." *Id.* at 1357–1358. After analyzing the duty the defendants owed to the plaintiff, the appellate court affirmed the trial court's grant of directed verdict because "the evidence so overwhelmingly established that the defendants did not know or have reason to know of the possibility that [the adult son] would commit a criminal act toward plaintiff that no contrary verdict could ever stand." *Id.* at 1358.

We decline to impose summary judgment at this stage of the proceeding where it is unclear what Batson's knowledge was, if any, of the abuse. If she had no knowledge, it is clear there would be no duty to warn. However, further inquiry into the facts is necessary to determine whether Batson had a duty to warn arising from a special relationship or under premises liability law. *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470 (1997) (Although all issues of novel impression do not require a trial, summary judgment is inappropriate where further inquiry into the facts is needed to clarify the application of the law.).

In so holding, we make no determination as to the viability of the underlying theories advanced by Doe. Our decision is limited to the conclusion that the trial court erred in granting summary judgment before sufficient discovery could be completed. Although there is no greater responsibility than the nourishment and protection of our children, we must ensure that issues involving the foreseeable consequences of harm to a child are clear. Citizens must be capable of satisfying the law without being unrealistically burdened by the imposition of vague or overly broad mandates. Consequently, it is imperative that factual foundations are adequately explored, thereby allowing the court to enter this novel area fully informed.

## CONCLUSION

The trial court erred in granting summary judgment because Doe was not given a full and fair opportunity to complete discovery. The trial court also abused its discretion in refusing to allow Doe's attorney to file affidavits pursuant to Rule 56(f), especially in light of the confusion surrounding the hearing. Furthermore, a genuine issue of material fact exists as to whether Batson knew or should have known her son constituted a danger to the young men who were sexually abused in her home. Further inquiry into the facts is necessary to adequately determine whether a duty to warn should be recognized in these circumstances. Therefore, the grant of summary judgment in favor of Batson is

**REVERSED AND REMANDED.**

HEARN and HOWARD, JJ., concur.