763 S.E.2d 645

Jane ROE, as parent and natural guardian of Judy Roe,
James Roe, and Joyce Roe, Minor Children Under
the Age of Eighteen, Appellants,

v.

Daniel BIBBY Sr. and Michelle Bibby, Defendants,

Of whom Michelle Bibby is the Respondent.

Appellate Case No. 2012–213350.

No. 5273.

Court of Appeals of South Carolina.

Heard June 11, 2014.
Decided Oct. 1, 2014.
Rehearing Denied Oct. 23, 2014.

288

Eric Marc Poulin, of Anastopoulo Law Firm, LLC, of North Charleston, for Appellants.

Eugene P. Corrigan, III, and J.W. Nelson Chandler, both of Corrigan & Chandler, LLC, of Charleston, for Respondent.

LOCKEMY, J.

Jane Roe, as parent and natural guardian of Judy Roe, James Roe, and Joyce Roe, minor children under the age of eighteen (minor Appellants), (collectively with Roe, Appellants) argues the circuit court erred in granting Michelle Bibby's (Respondent) motion for summary judgment. Appellants argue Respondent had a duty to warn them under the special relationship exception and a premises liability theory. We affirm.

## FACTS/PROCEDURAL BACKGROUND

This case involves allegations by the minor Appellants of sexual molestation by their neighbor, Daniel Bibby, Sr. The molestation allegedly occurred in a home owned by Mr. Bibby and his wife, Respondent.

Respondent and Mr. Bibby were married in 1969 and had three children. In 1995, the Bibbys' sixteen-year-old daughter disclosed that her father had sexually molested her when she was younger. Respondent confronted her husband about the allegations and Mr. Bibby admitted he had touched their daughter inappropriately. The molestation was reported to the South Carolina Department of Social Services (SCDSS) and Mr. Bibby was removed from the home and placed in counseling. Sometime thereafter, Mr. Bibby was permitted to return to the home.

In 2008, Roe, her husband, and the minor Appellants moved into a home across the street from the Bibbys. At the time, one of the Bibby's adult children was living with the Bibbys along with two of the Bibbys' grandchildren. The Bibby grandchildren and the minor Appellants became friends and often played together and visited each other's homes. Respondent was working outside the home at this time and was not always present when the minor Appellants were visiting. Respondent never informed Appellants of Mr. Bibby's prior acts of sexual abuse.

In April 2009, Mr. Bibby admitted to a counselor that he had been molesting his granddaughter. Upon learning of this admitted molestation, Roe questioned her children about any possible abuse. Minor Appellant Joyce confirmed that Mr. Bibby had touched her chest and threatened to kill her if she told anyone. Minor Appellant Judy also revealed similar accusations. Roe called the police and the minor Appellants were referred to the Dorchester Children's Center, where Judy was forensically interviewed. During her interview, Judy stated Mr. Bibby held her in a room with his granddaughter and took his clothes off and forced the children to take their clothes off as well. According to Judy, Mr. Bibby touched her breasts and vagina with his hands and made Judy touch the granddaughter as well. Judy also stated she was exposed to pornography in the Bibby household.

According to Roe, she had no knowledge of Mr. Bibby's prior sexual abuse of his daughter and she had no reason to suspect it was unsafe for her children to play at the Bibbys' home. Roe further testified she never would have allowed her children to visit the Bibby household had she been warned of Mr. Bibby's sexual propensities. Mr. Bibby denied touching the minor Appellants. He was convicted of molesting his granddaughter, but he was not prosecuted for any actions involving the minor Appellants.

On October 15, 2010, Appellants filed suit asserting causes of action against Mr. Bibby for assault, battery, false imprisonment, and intentional infliction of emotional distress. Appellants alleged Mr. Bibby sexually assaulted Judy and attempted to sexually assault Joyce. Appellants also alleged Joyce and minor Appellant James witnessed the sexual assault of Judy. Appellants asserted causes of action against Respondent for negligence and wrongful infliction of emotional distress on a bystander.

Mr. Bibby failed to file a responsive pleading and Appellants obtained a default judgment against him. Respondent answered the complaint and denied Appellants' allegations. Thereafter, in April 2012, Respondent filed a motion for summary judgment alleging she did not owe a duty to Appellants. Respondent's summary judgment motion was heard on July 10, 2012, and the court took the matter under advisement. Subsequently, on October 12, 2012, the circuit court granted Respondent's motion for summary judgment and dismissed Appellants' claims with prejudice. This appeal followed.

**STANDARD OF REVIEW**

When reviewing an order granting summary judgment, an appellate court employs "the same standard applied by the trial court under Rule 56, SCRCP." *Wachovia Bank, N.A. v. Coffey,* 404 S.C. 421, 425, 746 S.E.2d 35, 37 (2013) (internal quotation marks omitted). Rule 56 provides the trial court shall grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to

the nonmoving party." *Quail Hill, LLC v. Cnty. of Richland,* 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (internal quotation marks omitted).

## LAW/ANALYSIS

Appellants argue the circuit court erred in granting Respondent's summary judgment motion because Respondent had a duty to warn Appellants under the special relationship exception and a premises liability theory.

In order to establish a claim for negligence, a plaintiff must show "(1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages." *Doe v. Marion,* 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). "Without a duty, there is no actionable negligence." *Id.* "The existence of a duty owed is a question of law for the courts." *Washington v. Lexington Cty. Jail,* 337 S.C. 400, 405, 523 S.E.2d 204, 206 (Ct.App.1999).

" 'Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger.' " *Doe ex rel. Doe v. Wal–Mart Stores, Inc.,* 393 S.C. 240, 246, 711 S.E.2d 908, 911 (2011) (quoting *Faile v. S.C. Dep't of Juvenile Justice,* 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002)). Our courts recognize five exceptions to this rule: "1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant." *Id.* at 246–47, 711 S.E.2d at 911–12.

Although Appellants note the issue of whether a homeowner has a duty to warn visitors of his or her spouse's admitted prior sexual abuse is a novel issue in this state, they ask this

court to impose a duty to warn under the special relationship exception and a premises liability theory.

## A. Special Relationship Exception

█ Appellants assert Respondent had a special relationship with the minor Appellants that required her to act based upon her knowledge of Mr. Bibby's prior misconduct.

█ "The defendant may have a common law duty to warn potential victims under the 'special relationship' exception when the defendant 'has the ability to monitor, supervise and control an individual's conduct' and when 'the individual has made a specific threat of harm directed at a specific individual.'" *Doe v. Marion*, 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007) (quoting *Bishop*, 331 S.C. at 86, 502 S.E.2d at 81). It is not necessary for the injuring party to have made a threat while under the defendant's control or custody. *Bishop*, 331 S.C. at 88, 502 S.E.2d at 82. All that is required to impose a duty to warn is that the defendant knew or should have known of a specific threat made to harm a specific person. *Id.*

The circuit court found Respondent did not have a special relationship with Appellants because she did not have the ability to monitor, supervise, and control Mr. Bibby. Additionally, the court found Respondent had no knowledge of a specific threat to the minor Appellants.

Appellants argue that although the facts of this case present a novel issue, the issue was considered by this court in *Doe v. Batson*, 338 S.C. 291, 525 S.E.2d 909 (Ct.App.2000) (*Batson I* ), *affirmed in part, vacated in part*, 345 S.C. 316, 548 S.E.2d 854 (2001). In *Batson I*, a number of minors were sexually assaulted by a 27–year–old man who lived with his mother (Batson). The minors brought suit against Batson, alleging (1) the molestations occurred in her home, (2) she knew her son had young boys in his bedroom, and (3) she was negligent for failing to warn or act. *Batson I*, 338 S.C. at 295, 525 S.E.2d at 911. This court reversed the trial court's grant of summary judgment to Batson, finding discovery was not complete. *Id.* at 304, 525 S.E.2d at 916. In reviewing the trial court's grant of summary judgment, this court considered the special relationship test and noted, "case law from other

jurisdictions lends credence to [the minor's] assertion that Batson had a duty to warn in this case." *Id.* at 301, 525 S.E.2d at 914.

The supreme court affirmed this court's finding in *Batson I* that summary judgment was improper because discovery had not yet been completed; however, the court explicitly vacated the portions of this court's opinion discussing liability. *Doe ex rel. Doe v. Batson,* 345 S.C. 316, 323, 548 S.E.2d 854, 858 (2001) (*Batson II* ). In vacating those portions of the opinion, the supreme court noted, "[t]he paucity of the record makes it impossible for us to determine the merits of Doe's argument. Whether Batson had a cognizable duty will be determined after the record has been more fully developed." *Id.*

Appellants argue that "although *Batson I* is not strictly precedential, the opinion of the [c]ourt of [a]ppeals nonetheless sheds valuable and well-reasoned light on the issue." Appellants assert this case contains evidence of a specific threat (previous instances of molestation and more recent instances of viewing child pornography[1]) and a readily identifiable victim (a minor child roughly the same age as Mr. Bibby's prior victim who was invited into the home by Respondent).

We find the record contains no evidence Respondent had a special relationship akin to those special relationships recognized by our courts. *See, e.g., Marion,* 373 S.C. 390, 645 S.E.2d 245 (assuming special relationship between psychiatrist and patient/injurer); *Faile,* 350 S.C. 315, 566 S.E.2d 536 (finding special relationship between Department of Juvenile Justice and dangerous juvenile/injurer over whom it had custody per court order); *Bishop,* 331 S.C. at 86, 502 S.E.2d at 81 (finding special relationship between Department of Mental Health and involuntarily-committed patient/injurer in its custody); *Rogers v. S.C. Dep't of Parole & Cmty. Corr., et al.,* 320 S.C. 253, 464 S.E.2d 330 (1995) (assuming special relationship between state agencies charged with prisoner parole and

---

1. Judy stated in her interview she was exposed to pornography in the Bibby home. Additionally, the Bibby's adult son, Daniel Bibby, Jr., told police he witnessed his father watching child pornography in the two years leading up to the alleged molestation of the minor Appellants. According to Jane Roe, Daniel Bibby, Jr. told her he had informed Respondent on several occasions that Mr. Bibby was watching pornography.

prisoner/injurer who was being released from custody (but finding no specific threat)); *Ballou v. Sigma Nu Gen. Fraternity*, 291 S.C. 140, 352 S.E.2d 488 (1986) (finding a fraternal organization had a duty to an initiate who had become helplessly drunken from alcohol furnished to him by the fraternity). We note this case does not involve a commercial child care situation or other commercial arrangement. Furthermore, Appellants presented no evidence Respondent had the ability to monitor, supervise, or control the conduct of Mr. Bibby. Respondent worked full-time outside the home and was not always present when the minor Appellants were visiting.

Finally, we find the record contains no evidence Respondent had knowledge of a specific threat of harm to a specific individual. *See Marion*, 373 S.C. at 401, 645 S.E.2d at 251 (" '[I]t is not simply foreseeability of the victim which gives rise to a person's liability for failure to warn; rather, it is the person's awareness of a distinct, specific, overt threat of harm which the individual makes towards a particular victim.' " (quoting *Gilmer v. Martin*, 323 S.C. 154, 157, 473 S.E.2d 812, 814 (Ct.App.1996))). There is no evidence Mr. Bibby made a distinct, specific, and overt threat of harm towards the minor Appellants. Accordingly, the circuit court did not err in finding Respondent did not have a special relationship with Appellants.

**B. Premises Liability**

■ Appellants argue that even assuming Respondent did not owe Appellants a duty to warn by way of their special relationship, she is still liable under a premises liability theory.

■ "To establish negligence in a premises liability action, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Singleton v. Sherer*, 377 S.C. 185, 200, 659 S.E.2d 196, 204 (Ct.App.2008). "The nature and scope of duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury." *Id.* South Carolina recognizes four general classifica-

tions of persons present on the property of another: adult trespassers, invitees, licensees, and children. *Id.*

▆▆▆▆▆ Appellants contend they were licensees on Respondent's property. "Under South Carolina jurisprudence, 'a landowner owes a licensee a duty to use reasonable care to discover the licensee, to conduct activities on the land so as not to harm the licensee, and to warn the licensee of any concealed dangerous conditions or activities.'" *Id.* at 201, 659 S.E.2d at 204 (quoting *Landry v. Hilton Head Plantation Prop. Owners Ass'n,* 317 S.C. 200, 203, 452 S.E.2d 619, 621 (Ct.App.1994)). "The duty owed to a licensee differs from the duty owed to an invitee 'in that the [landowner] has no duty to search out and discover dangers or defects in the land or to otherwise make the premises safe for a licensee.'" *Id.* (quoting 18 S.C. Jur. *Negligence* § 44 (2007)).

Appellants note the issue of whether a homeowner has a duty to warn a licensee with regard to an alleged criminal act committed by a third-party is a novel issue. However, they assert Respondent had a duty to warn Appellants because she knew from Mr. Bibby's past actions there was a likelihood of conduct dangerous to the safety of the minor Appellants.

Initially, Appellants cite *Burns v. South Carolina Commission for the Blind,* 323 S.C. 77, 448 S.E.2d 589 (Ct.App.1994), for the proposition that our courts "have already held that a victim of a sexual assault may bring suit under a premises liability theory." While this statement is correct, *Burns* is distinguishable from the present case. First, *Burns* involved an alleged duty to protect a resident of a treatment facility instead of an alleged duty to warn a third-party of an alleged threat in a residence. *Id.* at 79–80, 448 S.E.2d at 591. Second, this court classified the plaintiff in *Burns* as an invitee and not a licensee, thus implicating a higher duty of care. *Id.* at 80, 448 S.E.2d at 591. Third, the *Burns* court determined a special relationship existed between the plaintiff-victim and the defendant-residential treatment facility. *Id.*

We find Respondent did not owe Appellants a duty to warn under a premises liability theory. We note no South Carolina cases recognize a duty to warn a licensee with regard to prior criminal acts committed by a third-party residing on the premises. Additionally, Mr. Bibby was not found to be a

continuing danger by State, and there is no evidence Respondent knew Mr. Bibby was a dangerous condition in their home or that he was abusing the minor Appellants. Respondent testified she believed the minor Appellants were untruthful regarding the alleged molestation and she did not believe Mr. Bibby molested any of the minor Appellants. Furthermore, Respondent, a lay person untrained in the recidivism of pedophilia, testified she believed Mr. Bibby was "cured" following his 1995 confession and release from treatment. Finally, a finding that Respondent had a duty to warn under a premises liability theory in this case could potentially subject homeowners to liability for failure to warn licensees of prior bad conduct, including conduct of a criminal nature, of any persons on the premises.

## CONCLUSION

Based on the foregoing, we find the circuit court did not err in granting Respondent's motion for summary judgment.

**AFFIRMED.**

KONDUROS, J., concurs.

WILLIAMS, J., dissents in a separate opinion.

WILLIAMS, J.

I respectfully dissent. I believe a homeowner has a duty to warn minor children of potential sexual abuse that could occur on the homeowner's premises under the special relationship exception and a premises liability theory. Whether Respondent breached a duty to warn Appellants of Mr. Bibby's sexual propensities in this context is an issue best decided by the jury. *See Miller v. City of Camden*, 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994) (stating negligence is a mixed question of law and fact with the existence and scope of a duty being questions of law and a breach of duty being a question for the jury). As a result, I would reverse the circuit court's grant of summary judgment and remand for further proceedings.

As noted by the majority, under the special relationship exception, "[t]he defendant may have a common law duty to warn potential victims ... when the defendant 'has the ability to monitor, supervise and control an individual's conduct' and

when 'the individual has made a specific threat of harm directed at a specific individual.' " *Doe v. Marion*, 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007) (quoting *Bishop v. S.C. Dep't of Mental Health*, 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998)). It is not necessary for the injuring party to have made a threat while under the defendant's control or custody. *Bishop*, 331 S.C. at 87–88, 502 S.E.2d at 82. All that is required to impose a duty to warn is that the defendant knew or should have known of a specific threat made to harm a specific person. *Id.* at 88, 502 S.E.2d at 82.

I believe this court's rationale from *Doe v. Batson*, 338 S.C. 291, 525 S.E.2d 909 (Ct.App.2000), is persuasive on the issue of whether Respondent had a special relationship with Appellants. Although the supreme court ultimately vacated the portion of *Batson* wherein this court found the mother could potentially be liable for her son's sexual abuse of minor boys in her home under a special relationship exception and a premises liability theory, the supreme court did not expressly disavow this court's reliance on either of those theories. *Doe ex rel. Doe v. Batson*, 345 S.C. 316, 323, 548 S.E.2d 854, 858 (2001). Rather, at issue in *Batson* was whether it was too early to dismiss the case based on the lack of discovery. *Id.* at 321, 548 S.E.2d at 857. Because relevant and crucial depositions had yet to occur, the supreme court ruled it was improper for this court to suggest sources of liability as "the paucity of the record ma[de] it impossible . . . to determine the merits of [the victims'] argument." *Id.* at 323, 548 S.E.2d at 858.

Unlike *Batson*, several significant witnesses, including Respondent, minor Appellants, and Roe, have already been deposed. Testimony elicited during those depositions created at least a mere scintilla of evidence as it relates to whether Respondent either knew or should have known that Mr. Bibby posed a specific threat of harm to the children that Respondent invited into her home. *See Bass v. Gopal, Inc.*, 395 S.C. 129, 134, 716 S.E.2d 910, 912 (2011) (citing *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009)) ("In a negligence case, where the burden of proof is a preponderance of the evidence standard, the non-moving party must only submit a mere scintilla of evidence to withstand a motion for summary judgment."); *Bishop*, 331 S.C. at 88, 502

S.E.2d at 82 (holding all that is required to impose a duty to warn is that the defendant knew or should have known of a specific threat made to harm a specific person).

Although the circuit court placed emphasis on the time lapse since Mr. Bibby had molested their daughter, the passage of time alone should not negate the possibility that Respondent knew or should have known of Mr. Bibby's sexually deviant proclivities. Respondent knew minor Appellants were coming over to their house to play and minor Appellants' presence in their home was a result of her own invitation. Further, Respondent admitted she was aware of Mr. Bibby's prior propensities for pedophilia, as she acknowledged Mr. Bibby sexually abused their daughter in the past. Even after Mr. Bibby was removed from their home and placed in counseling, Respondent clearly appreciated the possibility of Mr. Bibby abusing their daughter again. Specifically, she testified she placed a lock on their daughter's door after Mr. Bibby returned and hid the key from him.

The majority cites to cases in which our courts have found a special relationship existed but concludes this case is distinguishable because the abuse occurred inside Respondent's home as opposed to a commercial setting. I believe the location is not dispositive for purposes of creating a special relationship. Rather, I would find Wife's act of voluntarily inviting minor Appellants into her home while knowing of Husband's prior sexual abuse and continuing sexually deviant propensities is sufficient to impose a duty in this instance. See, e.g., Pamela L. v. Farmer, 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (Cal.Ct.App.1980) (holding that a wife who invited and encouraged children to visit her premises, even though she knew that husband had molested women and children in the past and might do so again, could be held liable in negligence); J.S. v. R.T.H., 155 N.J. 330, 714 A.2d 924 (1998) (holding that a wife could be held liable for the negligent failure to prevent or warn the victims about her husband's sexually abusive behavior when the wife had actual knowledge or special reason to know that the husband was likely to abuse a particular person or persons); Doe v. Franklin, 930 S.W.2d 921 (Tex.Ct.App.1996) (holding that a grandmother could be held liable for failure to protect her granddaughter from a known risk of sexual abuse by the grandfather).

I would find the testimony of Respondent's son, Daniel Bibby, Jr., is further evidence to support the conclusion that Respondent knew of Mr. Bibby's sexually deviant behavior toward children and that she knew he posed a risk to them. In a written statement to police, Daniel recounted that he had caught his father looking at child pornography on the Internet for at least two years leading up to the alleged molestations. Daniel also told police that Mr. Bibby discarded his computer for fear that either Daniel or Daniel's children would disclose that Mr. Bibby was using his computer for pornographic purposes. I would find the foregoing evidence regarding Mr. Bibby's apparent addiction to child pornography is particularly relevant to whether Mr. Bibby posed a specific threat of harm to minor Appellants.

I believe a jury could find Respondent liable under a premises liability theory. In coming to this conclusion, I do not intend to suggest that a homeowner could be subject to liability for failure to warn licensees of the criminal history of any person who happens upon the homeowner's premises. Nor do I urge the adoption of a rule that would impose a general duty to warn others in the surrounding vicinity of the dangerous propensities of one residing therein. Rather, I would find a homeowner owes a duty to take reasonable measures to protect children invited into his or her home from potential sexual assault when the homeowner knows or should know of the assailant's propensities.

Both parties agree minor Appellants were licensees in Respondent's home. As it relates to a licensee, a landowner has a duty

> [t]o use reasonable care to warn [the licensee] of any *concealed dangerous conditions* or activities which are known to the possessor, or of any changes in the condition of the premises which may be dangerous to him, and which he may reasonably be expected to discover.

*Neil v. Byrum*, 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986) (internal citation omitted). Although negligence actions under a premises liability theory typically pertain to dangerous conditions or activities on one's land, our courts have permitted a sexual assault victim to bring suit for injuries inflicted by a third party under a premises liability theory. *See Burns v.*

*S.C. Comm'n for the Blind,* 323 S.C. 77, 448 S.E.2d 589 (Ct.App.1994); *see also* 62 Am.Jur.2d *Premises Liability* § 409 (2014) ("Generally, owners or occupiers of land have no duty to protect visitors to their property from the deliberate criminal conduct of third parties[.] ... However, an exception exists if the ... landowner either knows or has reason to know from past experience that there is a likelihood of conduct dangerous to the safety of the visitor."). The majority finds *Burns* distinguishable because the plaintiff in Burns was an invitee in a treatment facility as opposed to a licensee in one's home, but, as children of tender years, I would hold that Respondent owed a heightened duty of care to minor Appellants similar to that imposed in Burns. *See Lynch v. Motel Enter., Inc.,* 248 S.C. 490, 494, 151 S.E.2d 435, 436 (1966) (finding owner or occupier of land may be liable for injuries to children of tender years, whether licensees or trespassers, if children are likely to come into contact with an obvious danger that could be reasonably anticipated and prevented by owner or occupier); F. Patrick Hubbard and Robert L. Felix, *The South Carolina Law of Torts,* 132–33 (4th ed. 2011) ("Special rules apply to children because they often lack the capacity to know and appreciate the danger and to understand the culpable wrongful entry on another's premises. Where the premises contain a condition unreasonably dangerous to children, the owner/occupier owes a child a duty of care even if the child is a trespasser or a licensee.").

Under the particular facts of this case, I would find Appellants presented at least a mere scintilla of evidence from which a jury could find Respondent breached a duty of care to minor Appellants. Accordingly, I would reverse the circuit court's decision to grant summary judgment and remand this case for further proceedings.