567 S.E.2d 530

**Darlene SHAW, Plaintiff,**

v.

**The CITY OF CHARLESTON, Appellant,**

and

**Marianna Hanckel f/k/a Marianna D. Glass, Respondent.**

**No. 3522.**

Court of Appeals of South Carolina.

Heard May 7, 2002.

Decided June 24, 2002.

Rehearing Denied Aug. 22, 2002.

34

Henry D. McMaster and Bryan P. Stirling, both of Tompkins and McMaster, of Columbia, for appellant.

James D. Myrick and Jonathan D. Crumly, both of Charleston, for respondent.

STILWELL, J.

Darlene Shaw was injured when she tripped on the sidewalk in front of Marianna Hanckel's house on Tradd Street in Charleston. Shaw sued Hanckel and the City of Charleston alleging they were both negligent and jointly and severally liable for her injuries. The trial court granted Hanckel's motion for summary judgment over City's objection. We reverse and remand.

## FACTS

Shaw alleges she tripped and injured herself when she accidentally inserted her foot into a hole where the sidewalk abuts an old coal grate appurtenant to Hanckel's house. The

grate is a textured piece of sheet metal covering an opening in the sidewalk which historically was a chute for coal to be delivered into the basement of the house. The opening is reinforced with brick, and the sidewalk is concrete.

In support of her motion for summary judgment, Hanckel argued the evidence showed only that the sidewalk, not the coal grate, caused Shaw's fall. She noted as a matter of law that City is responsible for maintaining the public sidewalk, and in fact, "[t]he City of Charleston has admitted this responsibility...." In opposition, City asserted it does not own the steel grate or the brick shaft and is not the responsible party. City summarizes its position:

> Hanckel has moved for summary judgment on the ground that "it is the duty of the City of Charleston, not hers, to maintain city sidewalks ... (quoting from page one of the text of Hanckel's motion)." There is no dispute regarding this assertion. However, Hanckel's reliance on this assertion as the basis for her motion for summary judgment is wholly misplaced. The issue here is not whether each defendant has a duty to maintain its own property. Rather, the central issue regarding Hanckel's motion is a question of location. Specifically: was the defect involved in the plaintiff's fall located on property owned and maintained by Hanckel or, rather, by the City? We submit that a genuine issue of fact exists regarding whether the defect is located on Hanckel's property or on the City's.

The trial court granted Hanckel summary judgment and clearly found that the hole in which Shaw tripped was part of the sidewalk. It found: "No evidence was presented that the hole in the sidewalk was caused by the grate.... In dispute here was whether homeowner Hanckel also owed a duty to inspect and maintain the sidewalk." In its conclusions of law, the trial court continued:

> There is no evidence in the record which would create a material question of fact that Hanckel owed a duty to inspect and maintain *public sidewalks* outside her house. The evidence in the record, taken in the light most favorable to the Plaintiff, establishes that even if Hanckel had some ownership rights in the air shaft cover and its surrounding stone, *such structures were squarely upon the public side-*

*walk and subject to the City of Charleston's control.* (Emphasis added.)

## ISSUES

Originally, the City's argument was limited to whether the trial judge erred in her finding that "the defect that caused this accident was a part of the sidewalk and not a part of the shaft owned by . . . Hanckel" where an issue of material fact exists regarding whether the defect was located on Hanckel's property or the sidewalk maintained by the City. Thereafter, this court directed the parties to brief "the issue of whether a co-defendant in an action based on negligence is an 'aggrieved party' within the contemplation of Rule 201(b), SCACR, thereby vesting it with the right to appeal a grant of summary judgment to its co-defendant when the plaintiff in the action, against whom the summary judgment is awarded, does not file an appeal." Understandably, City argues it is an aggrieved party and Hanckel argues it is not. Therefore, the two issues before us are:

1. Is City an "aggrieved party" with standing to challenge the grant of summary judgment to its co-defendant?
2. If so, was summary judgment properly granted?

## LAW/ANALYSIS

### I. Standing to Appeal

City argues it is an "aggrieved party" within the contemplation of the rule, and may therefore appeal the grant of summary judgment to its co-defendant. We agree.

Rule 201(b), SCACR, provides that "[o]nly a party aggrieved by an order, judgment, or sentence may appeal." We recently reiterated that "[a] party is aggrieved by a judgment or decree when it operates on his or her rights of property or bears directly on his or her interest." *Beaufort Realty Co. v. Beaufort County,* 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct.App.2001). "The word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right, or the imposition on a party of a burden or obligation." *Id.; see Parker v. Brown,* 195 S.C. 35, 44–45, 10 S.E.2d 625, 629 (1940) ("An aggrieved party or person is one who is

injured in a legal sense; one who has suffered an injury to person or property."). "A party cannot appeal from a decision which does not affect his or her interest, however erroneous and prejudicial it may be to some other person's rights and interests." *Beaufort Realty*, 346 S.C. at 301, 551 S.E.2d at 589–590; *First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 565, 511 S.E.2d 372, 378 (Ct.App.1998).

Under the peculiar facts of this case, we find City is an aggrieved party with standing to challenge its co-defendant's dismissal from the underlying cause of action. Shaw filed her complaint against City and Hanckel alleging negligence and joint and several liability between these co-defendants. "The Tort Claims Act governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against the government." *Washington v. Lexington County Jail*, 337 S.C. 400, 404, 523 S.E.2d 204, 206 (Ct.App.1999). City, being a "governmental entity" as defined in section 15–78–30(d), is liable for its torts "in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations ... contained herein." S.C.Code Ann. § 15–78–40 (Supp.2001). However, City's liability in damages to Shaw are capped for each occurrence and claim. S.C.Code Ann. § 15–78–120 (Supp.2001). Moreover,

> [i]n all actions brought pursuant to [the Tort Claims Act] when an alleged joint tortfeasor is named as [a] party defendant in addition to the governmental entity, the trier of fact *must return a special verdict specifying the proportion of monetary liability of each defendant* against whom liability is determined.

S.C.Code Ann. § 15–78–100(c) (Supp.2001) (emphasis added).

Hanckel argues City can never be an aggrieved party under the present facts because the Uniform Contribution Among Tortfeasors Act (UCATA) states it "shall not apply to governmental entities." S.C.Code Ann. § 15–38–65 (Supp.2001). She argues this section essentially places City in the position of a joint tortfeasor under the common law. The intention behind UCATA is to provide some relief to "a tortfeasor *who has paid more than his pro rata share of the common liability*." S.C.Code Ann. § 15–38–20(B) (Supp.2001) (emphasis added). Because the Tort Claims Act applies and clearly

provides that liability among or between tortfeasors shall be apportioned by the jury, this argument lacks merit.

Clearly the inclusion or exclusion of Hanckel, who may be deemed partially liable to Shaw, drastically affects City's potential exposure in this tort action. If Hanckel remains a party, the verdict may apportion the damages between Hanckel and City. Without Hanckel, however, City could only be apportioned 100% of any potential liability. Such a result under the Tort Claims Act clearly bears directly on its pecuniary interests.

Our sister state, Georgia, has drawn a similar distinction regarding appealability and standing turning on whether the co-defendant's rights are affected. In the case of *Hussey, Gay & Bell v. Ga. Ports Auth.*, the Georgia Court of Appeals held:

> (A) co-defendant does not have any standing to appeal an order granting summary judgment in favor of another defendant when (his) right has not been adversely affected thereby. Only if the co-defendants are sued as joint tortfeasors does the grant of summary judgment as to one potentially affect the other's right of contribution. Therefore, it is only in this situation that the co-defendant is deemed a losing party and therefore has standing to appeal the grant of summary judgment to another co-defendant.

*Hussey*, 204 Ga.App. 504, 420 S.E.2d 50, 53 (1992) (quotations and citations omitted). *See generally* 5 Am.Jur.2d *Appellate Review* § 275 (1995 & Supp.2002). In the seminal case, Georgia held a co-defendant had standing to appeal the grant of summary judgment to another co-defendant against whom a contribution claim was asserted. *R.E. Thomas Erectors, Inc. v. Brunswick Pulp & Paper Co.*, 171 Ga.App. 903, 321 S.E.2d 412 (1984). Later, the court clarified that relaxation of standing requirements for co-defendants was limited to those sued as joint tortfeasors. *C.W. Matthews Contracting Co. v. Studard*, 201 Ga.App. 741, 412 S.E.2d 539, 540 (1991); *see also Johnson & Harber Constr. Co.*, 220 Ga.App. 179, 469 S.E.2d 697, 699 (1996); *Shackelford v. Green*, 180 Ga.App. 617, 349 S.E.2d 781 (1986). Under similar circumstances, the Illinois Court of Appeals held that a co-defendant had standing to appeal the grant of summary judgment to another who would

otherwise share liability where their interests were adverse because dismissal was premised on determination of contractual assumption of co-defendant's liability to plaintiff, though no cross-claim for contribution had been filed. *Hammond v. N. Am. Asbestos Corp.*, 207 Ill.App.3d 556, 152 Ill.Dec. 425, 565 N.E.2d 1343 (1991).

We agree that the circumstances where a co-defendant will be an aggrieved party permitted to appeal a grant of summary judgment to another defendant are very narrowly circumscribed. This holding should not be read to confer such a right in all cases. Much will depend on the scope of summary judgment and the practical and preclusive effects on the relative rights of the parties which, of necessity, must be a fact-specific determination. As the Florida court has explained:

> Inherent in the right to oppose a grant of summary judgment to a co-defendant is the right of the non-moving co-defendant to demonstrate the existence of a genuine issue of material fact with regard to the plaintiff's claims against the moving co-defendant.

*U–Haul Co. of E. Bay v. Meyer*, 586 So.2d 1327, 1331 (Fla. Dist.Ct.App.1991), *cited with approval in Benton Inv. Co. v. Wal–Mart Stores, Inc.*, 704 So.2d 130, 132 (Fla.Dist.Ct.App. 1997).

However, where the grant of summary judgment is not determinative of the co-defendant's rights or does not impact potential liability, a co-defendant has been held not to have standing to appeal. *See, e.g. Aguirre v. Phillips Properties, Inc.*, 2001 WL 961337, ⸺ S.W.3d ⸺ (Tex.Ct.App.2001) (Because co-defendant could not show prejudice by grant of summary judgment and had not filed cross-claim, it had no standing since relative liability was not affected.); *Tinker v. Kent Gypsum Supply, Inc.*, 95 Wash.App. 761, 977 P.2d 627 (1999) (where no cross-claim was filed, co-defendant could not appeal grant of summary judgment); *Clay v. Pepper Constr. Co.*, 205 Ill.App.3d 1018, 150 Ill.Dec. 810, 563 N.E.2d 937 (1990) (co-defendants who did not cross-claim for contribution lacked standing to appeal summary judgment).

40

Thus, in this case, City is an aggrieved party within the contemplation of the rule and may appeal the grant of summary judgment to its co-defendant.

## II. Summary Judgment

█ City argues genuine issues of material fact preclude granting summary judgment in favor of its co-defendant, Hanckel. We agree.

Summary judgment is a drastic remedy that should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991). "Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Toomer v. Norfolk S. Ry. Co.*, 344 S.C. 486, 489, 544 S.E.2d 634, 635 (Ct.App.2001); Rule 56(c), SCRCP. "It is not appropriate[, however,] where further inquiry into the facts of the case is desirable to clarify the application of the law." *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing and Regulation*, 337 S.C. 476, 484, 523 S.E.2d 795, 799 (Ct.App.1999). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn [therefrom] must be viewed in the light most favorable to the nonmoving party." *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998); *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 59, 518 S.E.2d 301, 304 (Ct.App.1999). "If triable issues exist, those issues must go to the jury." *Rothrock v. Copeland*, 305 S.C. 402, 405, 409 S.E.2d 366, 367 (1991); *Young v. S.C. Dep't of Corrections*, 333 S.C. 714, 718, 511 S.E.2d 413, 415 (Ct.App. 1999).

█ To establish a cause of action for negligence, a plaintiff must prove the following three elements: (1) a duty owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach. *Hubbard v. Taylor*, 339 S.C. 582, 588, 529 S.E.2d 549, 552 (Ct.App.2000). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Bishop*

*v. S.C. Dep't of Mental Health*, 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). The trial court found "no evidence in the record which would create a material question of fact that Hanckel owed a duty to inspect and maintain *public sidewalks* outside her house." (Emphasis added.) We agree with this statement. We find nothing in the record to support a finding that Hanckel has accepted the duty to maintain the public sidewalks. *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (Generally, "[o]ne who controls the use of property has a duty of care not to harm others by its use."). However, this finding does not resolve the issue.

The record reflects that Shaw's fall was caused by a hole located somewhere adjacent to the coal grate next to Hanckel's house. Shaw avers that she tripped when her "foot became trapped *in a hole between the concrete of the sidewalk and a metal grate/cover* which extended from Defendant Hanckel's property into and upon the sidewalk. The hole in which Plaintiff's foot became caught was located on the sidewalk owned and maintained by the Defendants." (Emphasis added.) This hole was located "adjacent to *and extended beneath an old coal grate/cover* which extended out into the sidewalk, beside 6 Tradd Street." (Emphasis added.) Shaw described the hole as approximately four to six inches deep and six to seven inches wide and partially covered by the grate itself. She restated that her "fall was caused by a hole which was on property owned by, or appurtenant property owned by Marianna Hanckel. . . ." Shaw testified that she was unsure who actually owns the coal grate.

City's Superintendent of Streets and Sidewalks opined that the boundary between the private property owned by Hanckel and the sidewalk maintained by City would be the brick area. "Based on my experience, the boundary line, if I had gained access to that area, would be on this outside brick wall. Because one would have to build that brick wall to put whatever had existed at that point in time, and not at the opening." He later reiterated: "the edge of the metal would not be the boundary line, it would be at the end of the bricks, because they would build some form, some uniform form to support what that access roofing might have been." Similarly, the City Engineer and Director of the Department of Public Service stated the hole that caused Shaw's fall was located

entirely within the area owned and controlled by the adjacent homeowner, Hanckel.

> [T]he area which encompasses this air shaft includes the block apron or foundation which extend beyond the metal grate/cover of the shaft. . . . The metal grate covers only a portion of the entire area of the air shaft attached to the house; the grate does not cover the entire area of the air shaft. That is, the outer edges of this shaft on the eastern and western sides of the metal cover, which are made of block or stone material, are part of the shaft itself and are not part of the City's sidewalk.

City has not filed a cross-claim against Hanckel. City answered Hanckel's interrogatory that it believed she, not City, was responsible for maintaining the grate. However, City admitted responsibility for maintaining the sidewalk.

> The City is generally responsible for the maintenance, repairs and upkeep of its sidewalks, but landowners owning property or residences appurtenant to the sidewalks are responsible for their grates, or air shafts, which encroach upon the sidewalks and are also responsible for the physical parts of same and any and all damages the structures cause to the sidewalks.

The Superintendent corroborated the general duty City has accepted regarding sidewalks in its corporate limits. "[I]f one [of the grates] is broken and open, I'll put a barricade over it. . . ." Assuming the pictures accurately depicted the condition of the area, he stated he would have placed a barricade over it. Nevertheless, City argues an issue of fact over the actual ownership of this hole is still in dispute. We agree.

A dispute over ownership is ordinarily a mixed question of law and fact. *Cannon v. Motors Ins. Corp.*, 224 S.C. 368, 372, 79 S.E.2d 369, 371 (1953). We find the trial court erred in finding as a matter of law, "that even if Hanckel had some ownership rights in the air shaft cover and its surrounding stone, such structures were squarely upon the public sidewalk and subject to the City of Charleston's control." Ordinarily, the law imposes no duty on City to maintain private property. We disagree with the trial court's conclusion that the grate being located on the sidewalk renders it

subject to City's control and legal duty to maintain the sidewalk.

Whether City accepted the duty to maintain the offending area merely goes to the issue of apportionment of fault. As such, it is an issue for the jury. *See Bryant v. City of N. Charleston*, 304 S.C. 123, 127, 403 S.E.2d 159, 161 (Ct.App. 1991) (The fact that the Department of Highways and Public Transportation owns and maintains the subject sidewalk in the city of North Charleston does not prevent the City from undertaking its maintenance.). City's admitted duty to maintain public sidewalks is not dispositive of the location of the dangerous portion where the incident occurred, nor is it dispositive of ownership. The jury might find Hanckel has a similar duty of care if it found that she owned the portion with the hole. *See Miller*, 329 S.C. at 314, 494 S.E.2d at 815–16; *Epps v. United States*, 862 F.Supp. 1460, 1464 (D.S.C.1994) (Legal duty of municipality to maintain sidewalk does not absolve landowner with abutting property from similar duty to traveling public. "The general rule appears to be that an abutting landowner or occupier normally does not have a duty of care with respect to the safety of the sidewalk unless such a duty is imposed by legislation, the abutter created an unsafe condition on the sidewalk, *or the abutter has a special property interest in the sidewalk.*") (emphasis added).

## CONCLUSION

The trial court's dismissal of Hanckel at the summary judgment stage prejudices City. Genuine issues of fact exist regarding whether City or Hanckel owns the coal grate and its adjoining foundation and where precisely the hole is located that caused Shaw to trip. The record at this stage of the proceeding does not resolve precisely how the accident occurred. The hole itself clearly contributed, but it is unclear whether the grate likewise contributed to Shaw's fall. Whether either or both of the co-defendants has accepted the duty to maintain this portion of the sidewalk is not before this court. Rather, this appeal is concerned only with whether a genuine issue of fact exists regarding the ownership of the subject portion of the sidewalk and the duty of care appurtenant thereto. Without factual proof that Hanckel does not own the hole and did not undertake a duty to maintain it, the trial

court's order dismissing Hanckel as a co-defendant was premature.

**REVERSED AND REMANDED.**

CURETON and SHULER, JJ., concur.